No. 16,657.

## WHITE, TRUSTEE, ETC., *v.* THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD CO.

EVIDENCE.—*Exclusion.*—*Sparks from Railroad Engine.*—Exclusion of evidence as to how a witness knew that sparks emitted from defendant's engine were alive is harmless, if error, where he testifies that he has seen live sparks thrown a specified distance.

INSTRUCTIONS TO JURY.— *Negligence.*— *Railroad.*—An instruction which, after stating that the negligence of defendant charged in the complaint consists in its engine being old and out of repair, and not equipped with a proper spark arrester, and also in being negligently and carelessly operated, states that the issue is whether or not the evidence and circumstances preponderate in favor of the proposition that the fire was caused by defendant's negligence "in operating its engine in the manner alleged," is not prejudicial error as confining the negligence to the mere operation of the engine, especially where the jury are elsewhere instructed that defendant would be liable if the fire was caused by the failure to use proper appliances, by suffering them to be out of order, or by negligently operating the engine, or other negligence.

SAME.--*Preponderance of Evidence.*—*Complaint.*—An instruction that if a careful consideration of the evidence and circumstances does not create an honest belief "that the allegations of the complaint are true" there is no preponderance for plaintiff, is not objectionable on the ground that it requires plaintiffs to prove all the allegations of their complaint, where from the other instructions the jury must have understood that the plaintiffs were simply required to prove their alleged cause of action by a preponderance of the evidence.

SAME.—*Impeached Witness, Testimony Of.*—An instruction that the jury have the right to reject all the testimony of a witness who has been impeached by proof that he has made contradictory and inconsistent statements out of court concerning material and relevant matters, is proper under section 515, R. S. 1894, providing for impeachment by such proof.

From the Allen Superior Court.

*Bates & Paden, Morris & Barrett* and *Morris, Newberger & Curtis,* for appellants.

*S. E. Williamson* and *Bell & Morris*, for appellee.

JORDAN, J.—This was an action by appellant, as trustee, etc., to recover alleged damages in the sum of one hundred and eleven thousand dollars, and over, growing out of the destruction by fire, of a certain factory building, together with a large amount of material and machinery therein contained. The building is designated as "The White Wheel Works," situated in the city of Fort Wayne, Indiana.

The complaint charges, among other things, as follows:

"That on the eighth day of August, 1890, and for a long time prior thereto, the said defendant's line of railroad was located, constructed and extended alongside, and immediately south of, and contiguous to, the said buildings, works and property of the plaintiffs above described, and during all said times said railroad was used and operated by the defendant in running its locomotive engines and cars; that on or about the eighth day of August, 1890, the defendant, by its agents and servants, while running and operating its said railroad, and while running a locomotive engine and train of cars thereon, alongside said property above described, and without any fault of plaintiffs, or negligence of plaintiffs contributing thereto, negligently and carelessly set fire to, and caused the destruction of, said property above described, to the amount and value of one hundred and eleven thousand, eight hundred and ninety-three dollars, whereby plaintiffs, John W. White, James B. White, composing Whites' Wheel Works and American Wheel Company, were damaged in the sum of $111,890, and the defendant thereby became indebted to plaintiffs in said sum. The locomotive engine attached to and moving said train of cars at said time and place

was old and out of repair, and was defective in its smoke stack, and not supplied and equipped with the best and well known appliances to prevent the escape of sparks from its smoke stack. It was negligently and carelessly operated, in that the power of said engine was overtaxed by moving too great a number of cars, too heavily loaded, and while approaching and passing said property of plaintiffs, was too heavily and suddenly fired, and worked too hard, and the fire in its fire box shaken up, thereby causing the escape of large quantities of sparks of fire and burning cinders, which were borne and carried by strong winds then blowing from the south, in and upon said buildings, which burned and destroyed the property of plaintiffs."

It is further alleged that the insurance companies have paid the loss incurred by them by virtue of the policies covering the said building, material and machinery, and that they have been subrogated to an extent to the rights of the plaintiffs.

Under the issues joined, there was a trial by jury, and a verdict in favor of appellee, and over appellants' motion for a new trial, judgment was rendered on the finding. The overruling of this motion is the only error assigned. The grounds upon which appellants base their contentions for a reversal of the judgment are: That the court erred in giving the jury instructions number four, six and seven, and in not permitting a witness for appellants in rebuttal to answer a certain question propounded to him, relative to the character of the sparks emitted from appellee's engine.

The fourth charge given by the court on its own motion, and of which appellants' learned counsel complain, is as follows:

"In applying the evidence in the case to the complaint, remember that the complaint charges negligence

in firing the property alleged to have been destroyed by sparks and cinders carried by the wind upon plaintiffs' buildings, which sparks and cinders were, it is alleged, caused by the negligence of the defendant in this, that the engine was old, worn, and out of repair; defective in smoke stack and spark arrester; not equipped with the best well known appliances to prevent escape of sparks from the smoke stack; that it was negligently and carelessly operated, in that it was overtaxed with too heavy a load, and that when approaching plaintiffs' property it was too heavily and suddenly fired, and worked too hard, and its fire-box shaken up, causing escape of sparks and cinders, destroying plaintiffs' property.

"Does the evidence and circumstances in the case preponderate in favor of the *proposition that the fire was caused by the negligence of the defendant in operating its engine in the manner alleged, or does the evidence fail to show that the fire was caused as alleged. This is the issue.*"

The contention is that the latter part of this instruction, which we have indicated by the *italics*, is misleading upon the issues in the cause. They insist that the words, "or does the evidence fail to show that the fire was caused as alleged, * * manifestly meant, and were intended to mean, and were so understood by the jury to mean, a negative suggestion as to whether the evidence did not fail to preponderate in favor of the proposition immediately preceding. They further urge that when the closing words of the charge ' *This is the issue,*' are considered, 'it is evident that the court intended to limit the jury to the inquiry alone as to whether the engine was negligently and carelessly operated, in that it was overtaxed with too heavy a load, and when approaching plaintiffs' property it was too heavily and suddenly fired, and was worked too hard, and

its fire-box shaken up, causing the escape of the sparks and cinders which fired plaintiffs' property ;' that the statement as made by the court in the charge, excluded from the jury the fact that a sufficient and proper spark arrester might be considered in determining whether or not the engine was negligently operated; that one of the grounds upon which appellants sought to recover was that appellee had failed to provide the engine with a proper spark arrester."

In the first part of the instruction the court seems to have substantially stated all the material negligent acts alleged against appellee, which coupled together apparently constitute the *gravamen* of the complaint.　After reciting the alleged acts, substantially as charged in the complaint, the court closed the instruction with the part or paragraph upon which appellants found their objections, namely, "Does the evidence and circumstances in the case preponderate in favor of the proposition that the fire was caused by the negligence of the defendant in operating the engine *in the manner alleged*, or does the evidence fail to show that the fire was caused, *as alleged.　This is the issue.*" The *italics* are our own. The charge in controversy, under a well-settled rule, must be viewed as an entirety and not by detached parts or clauses, and when so considered and applied to the cause of action as alleged, it is obvious, we think, that it is not open to the objections urged against it by counsel.　An examination of the complaint discloses that the negligence of which appellants complain consisted of appellee using or operating an engine, old and out of repair, and not equipped with a proper spark arrester as averred, and while heavily loaded and in the condition mentioned while approaching and passing appellants' property it was carelessly operated and the fire in its box shaken up, etc., thereby causing the escape

of a large quantity of sparks of fire, which ignited and burned appellants' building. It is therefore evident that the defective condition of the engine, coupled with the alleged facts showing the manner in which it was operated by the appellee at the time, formed the basis of the cause of action. Consequently, if we consider the charge in its application to the cause of action set forth in the complaint, the words, caused by the negligence of the defendant in operating its engine in the manner alleged, included all the issuable facts constituting the negligence of which appellants complained and the words could not, in reason, be interpreted as excluding from the jury the insufficiency of the engine in respect to its not being equipped with a proper spark arrester.

We cannot indulge in the presumption that intelligent jurors could have been misled by this part of the charge, or given to understand that their investigation was limited to a part only of the constituent facts in issue. But if it should be conceded that this instruction was not as clear, explicit, or specific in its terms, in defining appellants' right of recovery as it ought to have been, we are of the opinion, that the infirmity thereof, in this respect, at least, was cured by another of the court's instruction, wherein it was substantially stated that if the fire was caused by a failure to use such appliances, or by suffering them to be out of order, or by negligently operating the engine, or other negligence, then the appellee would be liable for the consequences. This latter charge surely is as broad in its terms as appellants could desire. Considering the instructions along with the entire series given by the court, on its own motion, and also at the request of the respective parties, we are satisfied that the jury was fully and properly advised upon all of the questions at issue in the cause, and as to the law applicable thereto, and that no error prejudical to

appellants' material rights in the case could have resulted from the giving of the charge in controversy.

. Instruction number six, which appellants condemn, is as follows :

"The credit of a witness may be impeached by proof "that he has made statements out of court contrary to, "and inconsistent with, what he testifies on the trial "concerning matters material and relevant to the issues "joined, and when such witness has been thus impeached "about matters material and relevant to the issues, the "jury have the right to reject all the testimony of such "witness, except in so far as the witness has been cor-"roborated by other credible evidence in the cause."

Counsel say that this instruction does not embrace a correct statement of the law relative to the right of the jury to reject the testimony of a witness who has made statements out of court, which are contrary to, and inconsistent with, material evidence given by him upon the trial. Their further contention is that the court's statement that they had the right to reject the testimony, was equivalent to saying to them, that it was their duty to do so. The statute recognizes the rule that a witness may be contradicted or impeached by showing that he has made statements out of court different from what he has sworn to upon the trial. Section 515, R. S. 1894 (section 507, R. S. 1881). The term impeach, in its legal definition, when used in reference to a witness, signifies to discredit, or to show or to prove that he is unreliable, or unworthy of belief. As a general rule, where there is no impeaching or discrediting evidence appearing or shown in the case against a witness, the jury should not arbitrarily disregard his evidence. But where he has been successfully impeached, and his evidence has not been either in whole or in part corroborated by other

credible testimony in the cause, it is within the province of the jury or court trying the issues to entirely disregard his testimony. While it is correct that the law does not require that jurors who believe the evidence of an impeached witness, in the particular instance to be true, shall nevertheless reject it; still we know of no rule which demands that a jury or court shall consider or accept the testimony of one, which under all the circumstances, or evidence in the case, they believe to be either unintentionally or wilfully false. Tested then by the principles of law which we have stated, how stands the charge in controversy?

The jurors in the case at bar were advised in a general way thereby, that the credit of a witness may be impeached by proof that he has made statements out of court contrary to, and inconsistent with, what he testified to on the trial, concerning matters material and relevant to the issues joined, etc. The force and effect of the instruction was but to inform the jury that one of the legally recognized modes of impeachment of a witness, was by showing statements relevant and material to the issues, made by him, and which were contrary or inconsistent with those sworn to by him upon the trial; and when impeached in this manner, that it was within the province of the jury to disregard or reject all of the testimony of such witness except so far as he has been corroborated by other credible evidence. We fail to see anything in the charge of which appellants have a right to complain, or which militates against any principle of law to their prejudice. *Seller* v. *Jenkins*, 97 Ind. 430.

An instruction upon impeachment of witnesses, not as full and complete as the one under consideration, was upheld by this court in the case of *Harper* v. *State*, 101 Ind. 109. See also *Smith* v. *State*, 142 Ind. 288.

The part of the seventh instruction to which appel·lants object, is as follows :

"If, however, a careful consideration 'of all the evidence and circumstances in the case do not create an honest belief that the allegations of the complaint are true, then there is no preponderance, and the jury shall find for the defendant.'"

Counsel condemn this charge upon the same grounds that they do the fourth, heretofore considered, for the reason as they contend, that it required them to prove all the allegations in their complaint. Considering the instruction as a whole, it properly and substantially stated a correct proposition. The words "create an honest belief that the allegations of the complaint are true," in view of that portion of the charge preceding, and also in view of the other instruction given, must have been understood by the jury as meaning that the plaintiffs were required to prove their alleged cause of action by a preponderance of the evidence. Counsel cite us to *Herbert* v. *Drew*, 32 Ind. 364. This decision has no application upon the question raised by them, for the reason that in that case the complaint was in three paragraphs, each being a separate and distinct cause of action, any one of which, as said by the court, if proven, entitled the plaintiffs to a verdict.

We have examined all the instructions given upon the trial, and we may again assert that when considered as an entirety, as they must be, they fairly and correctly expressed and presented to the jury the law relative to the issues involved. This being true, under a firmly settled rule, the judgment will not be reversed because one instruction, considered alone, may be inaccurate in part, or not sufficiently full and complete. There are no such inaccuracies in any of the charges given by the court of a character as to have misled the jury, and the

appellants have no just grounds of complaint in this respect.

Appellants' next and last contention is, that the court erred in not allowing a witness called by the former in rebuttal to answer the following question :

"State how you know that those sparks that you have testified you have seen emitted from defendant's engine were alive?"

Possibly the question was not proper upon rebuttal, and for this reason was excluded by the court. As to this we are not advised by appellant. Substantially the same question, however, was asked this witness, to which he responded in another part of his testimony, that he had seen live sparks thrown from the engine thirty feet. If the sparks were alive, the importance of having the witness to disclose the source of his knowledge of that fact, was not essentially material to appellant. The error, if any, at most, was harmless.

We find no error in the record that would warrant a reversal of the judgment, and it is, therefore, affirmed.

