## MILLER *v.* THE STATE OF INDIANA.

[No. 21,547.   Filed May 24, 1910.]

1. HOMICIDE.—*Evidence.*—*Circumstances of Discovery of Revolver.* —*Unresponsive Answers.*—*Striking out.*—Where a witness for the State, in a homicide case, was asked on cross-examination when he found "that gun on the lot east" of his house, and he answered: "That was the time when Miller [defendant] had his troubles with his first wife, and she told me that he tried to kill her," a motion to strike out what the wife should have said to him should be sustained.   p. 258.

2. APPEAL.—*Erroneous Ruling.*—*Presumptions.*—An erroneous ruling at the trial is presumed, on appeal, to be prejudicial, and it is incumbent upon the adverse party to show that such ruling was harmless. *Reed* v. *State,* 141 Ind. 116, modified.   pp. 259, 261.

3. HOMICIDE.—*Evidence.*—*Admission of Witness as to Collateral Matters.*—*Impeachment.*—Where defendant's wife, in a prosecution for homicide, denied on cross-examination that she laughingly stood by the corpse of the murdered man whose lips were partly open and said: "Let's give him a drink," and then pouring some embalming fluid into his mouth said: "It will do him good," it is improper to permit the State to introduce evidence that she made such statements and committed such acts.   p. 260.

4. HOMICIDE.—*Evidence.*—*Statements of Witness as to Collateral Matters.*—*Impeachment.*—In a prosecution for homicide, where defendant's wife, on cross-examination denied saying that "Since this [the murder] has happened, I told Herman [the defendant] where his three big guns were," it is improper to permit the State to introduce evidence showing that the witness made such statements.   p. 260.

5. WITNESSES.— *Impeachment.* — *Collateral Matters.* — Witnesses may not be impeached as to statements concerning immaterial or collateral matters.   p. 260.

6. HOMICIDE.—*Evidence.*—*Threats of Accused toward Witnesses.*— Threats made by accused, in a homicide case, against certain witnesses who had testified against him are not admissible against him in such homicide case.   p. 261.

From Allen Circuit Court, *E. O'Rourke,* Judge.

Prosecution by The State of Indiana against Herman Miller.   From a judgment of conviction, defendant appeals. *Reversed.*

*Richard K. Erwin* and *Homer C. Underwood,* for appellant.

*James Bingham,* Attorney-General, *Albert E. Thomas,* Prosecuting Attorney, *A. G. Cavins, E. M. White* and *W. H. Thompson,* for the State.

JORDAN, J.—The State prosecuted appellant upon an indictment in three counts returned by the grand jury of Allen county, Indiana, wherein he was charged with the murder of Columbus Croy. The first count of the indictment charged that appellant, at said county, on June 7, 1907, feloniously and with premeditated malice killed and murdered said Croy. The second and third counts charged that appellant purposely killed and murdered Croy, while he (appellant) was engaged in the perpetration of a burglary in said county and State on June 7, 1907. A motion to quash each count was overruled, and appellant entered a plea of not guilty. There was a trial by a jury and a verdict returned finding defendant guilty of murder in the first degree, and assessing his punishment at imprisonment in the state prison during life. Over his motion for a new trial, the court rendered judgment on the verdict.

The alleged errors assigned and discussed by appellant's counsel in this appeal relate to the overruling of the original and the supplemental motions for a new trial. Numerous errors are assigned in the original motion, among which are those relating to the exclusion of evidence offered by appellant and the rulings of the court permitting the State to introduce certain evidence over appellant's objection and denying his motions to strike out evidence, and in allowing the State to impeach certain of appellant's witnesses upon immaterial and collateral matters. The insufficiency of the evidence is also assigned as a reason for a new trial.

It appears that Croy, at the time he was killed, was the marshal of the town of Woodburn, a small incorporated

town situated in Allen county, Indiana. Appellant had formerly served as marshal of this town. The evidence in the case is conflicting and in part circumstantial. We, however, express no opinion in regard to its sufficiency to sustain the verdict of the jury.

Fred A. LaDuke, one of the parties charged with the murder of decedent, and who, from his own testimony, is shown to have been an accomplice of appellant, appears to have been the principal witness against appellant. This witness testified, among other things, that on the night of June 6, 1907, he, together with John Stout, John Baker and appellant herein, broke into a saloon conducted by Joe Faulkner in said town of Woodburn; that while standing on a street corner on the night in question John Baker said: "I am awful dry, let's go and get something to drink." Witness said: "Where?" Baker said: "Over to Joe's"— meaning Joe Faulkner's saloon. Baker said to appellant: "Come on Miller, let's have a drink." Stout said: "Yes, come on, we're ready." Baker went to the back door of the saloon and knocked, but there was no response. He then said: "Boys, we can't get in there, let's go around to the window." All of the persons went in single file; Baker first, Stout next, then appellant, and the witness, La-Duke, last. Witness testified that Baker pried at the window with something which he had picked up, and finally broke the glass and pried up the sash; that after Baker had entered the saloon through the window, he told Stout to watch in front, and Miller to watch the back part; that all of the men went into the saloon, for the purpose of getting some whisky and cigars; that after they entered the saloon he heard a noise down the alley, around the printing office, and the next thing he heard was Stout, who said: "Stay back there," and then Stout fired his pistol twice, but he did not know that any one was hit by the shots fired by Stout; that the men then left the saloon, and went to

Vol. 174—17

their respective homes; that he did not know until the next morning that any one was shot, and he could not say that the shots fired by Stout had hit any one. Croy appears to have been killed on the night in question about 12 o'clock. Sometime after that hour his body was found on the street a short distance from the saloon, lying across the sidewalk. It appears that he had been shot through the chest, and was dead at the time his body was discovered.

Appellant testified on his own behalf. He denied that he had had anything whatever to do in respect to the murder of Croy or to breaking into the saloon. He intro-
1. duced other evidence tending to rebut the charge made by the State. On the trial the State introduced as a witness J. A. Betts. This witness testified, without stating any particular time, that he had found a revolver on the lot east of his house in the town of Woodburn; that this lot was adjacent to the premises belonging to appellant. On cross-examination appellant's counsel propounded to this witness the following question: "When was it you found that gun out on the lot east of your house?" To this question the witness answered: "That was the time when Miller [meaning appellant herein] had his troubles with his first wife, and she told me that he tried to kill her."

Appellant's counsel promptly moved to strike out this answer in respect to what the wife of appellant had told the witness, on the ground that it was not responsive to the question. The court overruled this motion and permitted the evidence to remain and go to the jury. After this motion was overruled, in the course of the witness's examination, he stated that he found the revolver in question ten years before the trial. This witness, during his examination, evinced a disposition to inject into the case other impertinent evidence not responsive to the questions propounded.

That the answer of the witness was not responsive to the question asked is so evident that no argument is necessary

to disclose that fact. Counsel for the State do not attempt to justify the action of the trial court in permitting the statements made by the answer in question to remain in the evidence. They assert in a general way that in order to secure a reversal of a judgment in a criminal case

2. it must appear from the record that the error was harmful and tended to injure the party aggrieved. In support of their assertion they cite the case of *Reed* v. *State* (1895), 141 Ind. 116. This is not the correct rule, although it may be said that there is language in the case of *Reed* v. *State, supra,* which supports counsel's contention. The true rule was affirmed and adhered to by this court in the case of *Cleveland, etc., R. Co.* v. *Case* (1910), *post*, 369, where it is said: "As a general rule, where it is shown in a case on appeal to this court that the trial court committed a material error in some ruling or decision, either in giving instructions or otherwise, we must presume that such erroneous ruling or decision was prejudicial to the party complaining in respect thereto, unless it affirmatively appears in some manner from the record that the ruling or decision was harmless, and the burden is not upon the party claiming to be aggrieved thereby to show that he was prejudiced by the erroneous ruling or decision, but the burden rests upon the opposite party to show by the record in the case that the party complaining was not prejudiced or harmed thereby." Citing numerous authorities. This rule is also affirmed in the case of *Nelson* v. *Welch* (1888), 115 Ind. 270, and is reaffirmed in the case of *Porter* v. *State* (1910), 173 Ind. 694. See, also, *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435.

So far as the decision in *Reed* v. *State, supra,* can be said to be out of line with the holding of this court in the cases of *Cleveland, etc., R. Co.* v. *Case, supra,* and *Porter* v. *State, supra,* upon the point in question, to that extent it must be deemed and held to be modified. Appellant's motion to strike out the answer in controversy should have been sus-

tained, and in denying it the trial court must be held to have committed prejudicial error.

Louise Miller, wife of appellant, was a witness in his behalf. She testified that at the time it was claimed by the State that her husband was engaged in committing the burglary at the saloon, as testified to by LaDuke, he was at home in bed. On cross-examination she was asked by counsel for the State if she, at the residence of Columbus Croy, while standing by the corpse of decedent, and while the lips of the latter were partly opened, had not laughingly said: "Let's give him a drink;" then taking a cup of embalming fluid poured some of it into the mouth of the corpse saying: "It will do him good." In answer to this question the witness gave a negative answer. The State, over the objections and exceptions of appellant, was permitted to call two witnesses, and by them prove that Mrs. Miller had made the statements and committed the act embraced in the question propounded to her on cross-examination.

She was further asked by the State, on cross-examination, if she had not made the following statements at the residence of Columbus Croy, in the presence of certain witnesses: "Since this has happened [referring to the murder], I told Herman [referring to appellant] where his three big guns were." To this question the witness responded in the negative. Thereupon, the State was permitted, over the objections of appellant, to call certain witnesses and prove that Mrs. Miller had made the statements. It is apparent that these questions propounded to Mrs. Miller on cross-examination were for the purpose of laying the foundation for impeaching her credibility.

The rule is well settled that a witness may be impeached by showing that he has made statements out of court inconsistent with or contradictory of the testimony which he has given on the witness-stand in regard to matters material or pertinent to the issues. But

an immaterial matter cannot be made the foundation for an impeaching question. *Zonker* v. *Cowan* (1882), 84 Ind. 395; *Brown* v. *Owen* (1884), 94 Ind. 31; *Seller* v. *Jenkins* (1884), 97 Ind. 430; *White* v. *New York, etc., R. Co.* (1895), 142 Ind. 648; *Blough* v. *Parry* (1896), 144 Ind. 463; *Barton* v. *State* (1900), 154 Ind. 670, and authorities cited; *Miller* v. *Coulter* (1901), 156 Ind. 290; *Hinkle* v. *State* (1901), 157 Ind. 237.

In the case of *Blough* v. *Parry, supra,* this court said: ''It is not every statement made out of court by a witness that affords a ground of impeaching him. It is only such statements made out of court contrary to the testimony of the witness in court, where such testimony relates to a material matter in issue.'' The facts stated in the questions propounded to Mrs. Miller, by which the State proposed to impeach her, were immaterial, and not in any manner inconsistent with or contradictory of her testimony as given in court. Therefore, the State was bound by her negative answers, and the court erred in allowing it to introduce witnesses to contradict her. We must presume that the impeaching testimony, under the circumstances, was prejudicial to appellant.

The State introduced as a witness Jesse Grice, the sheriff of Allen county, who had appellant in his custody. This witness, over the objections and exceptions of defendant, was, by the court, permitted to testify that during the trial, when he was taking defendant from the courthouse back to the jail, defendant, in speaking in respect to witnesses who testified against him, said: ''We have showed up some of them and before we get through we will show up some more of them, and when I get out of this I will get even with some * * * [using a vile epithet] for making me wear these hand-cuffs.'' Counsel in behalf of the State seek to justify the admission of the evidence given by Sheriff Grice, on the ground that it was competent as showing that appellant was a man of violence and was vin-

dictive. It certainly requires no extended argument to prove that this evidence was not competent for the reason advanced by the State. We are not cited to any authority which, under the circumstances of this case will sustain the competency of the evidence in question. It clearly falls within the condemnation of the principle announced in the cases of *Porter* v. *State, supra,* and *Dunn* v. *State* (1904), 162 Ind. 174. In the case last cited this court said: "It is a rule as old as the law itself, subject to numerous exceptions, all of which fall so far short of the facts of this case that we deem it unprofitable to notice them, that substantive evidence in both civil and criminal cases must be confined to the facts embraced within the issues joined, and that no such evidence is competent that does not form a link in the chain of proof which naturally and reasonably tends to establish some material fact in the case as made between the parties.   *   *   * And the law will not permit the State to depart from the issue, and introduce evidence of other extraneous offenses or misconduct that has no natural connection with the pending charge, and which are calculated to prejudice the accused in his defense." The court erred in admitting this evidence.

Clarence Omo, a witness for the State, testified at the trial that, about two weeks after the murder of Croy, he went to a certain saloon in Fort Wayne to get some beer; that he saw two men in the closet of the saloon, and heard them talking; that by their voices he recognized them to be John Stout and appellant Herman Miller; that he heard Stout say to Miller: "Oh, forget it." That Miller said in reply: "Well, we done it. They can't get us. We've fixed him all right." He further testified that the two men went out of the saloon behind him, and that he recognized them to be Miller and Stout. After the conviction of appellant, and after his original motion for a new trial had been denied, this witness appears voluntarily to have confessed that the evidence heretofore referred to, which he gave on the trial, was

wholly false and untrue. In support of his confession he seems voluntarily to have made an affidavit, in which he stated that his testimony at the trial, in relation to seeing John Stout and Herman Miller in the saloon and hearing the conversation between them was false; that he never saw Stout nor Miller or either of them in said saloon, and that no such conversation was heard by him. He further stated in his affidavit that he made it without hope of reward and without any promise of immunity, and that he made it solely that he might, so far as was in his power, right the wrong which he had done to Stout and Miller by the testimony which he had given upon the trial.

The court permitted appellant to file a supplemental motion for a new trial, supported by the affidavit of Omo. This latter motion set up as a ground for a new trial the confession of the witness Omo that he had wilfully perjured himself in giving the testimony in question. The motion was denied, and upon this ruling appellant predicates error. The court appears to have permitted the filing of the supplemental motion upon the authority of the case of *Dennis* v. *State* (1885), 103 Ind. 142. Under this latter decision appellant's counsel argue that a new trial, as requested under the supplemental motion, should have been granted. In relation to the granting of a new trial, in a case where a witness is properly shown to have wilfully testified falsely to some important fact or facts in the case, see 29 Cyc. 868, 869, and cases therein cited.

As the judgment below must be reversed on account of the errors herein referred to, it is not essential that we consider the question whether the court erred in overruling the supplemental motion for a new trial. Other alleged errors, some of which relate to the impeaching of other of appellant's witnesses upon immaterial facts, are argued and

urged by appellant's counsel. We pass these, however, without consideration, as possibly they may not arise upon another trial.

For the errors of the trial court, which we have herein pointed out, the judgment is reversed, with instructions to the lower court to grant appellant a new trial.