JOE RECTOR *v*. STATE OF INDIANA.

[No. 270S27. Filed July 19, 1971. Rehearing denied September 3, 1971.]

*Bernard M. Tetek, Gerald N. Svetanoff*, of Gary, for Appellant.

*Theodore L. Sendak*, Attorney General, *Robert F. Hassett*, Deputy Attorney General, for Appellee.

ARTERBURN, C.J.—Defendant was charged with the crime of kidnapping and pleaded not guilty thereto. The jury returned a verdict finding him guilty as charged. Judgment was entered thereon and the defendant was sentenced to life imprisonment at the Indiana State Prison.

Appellant was arrested at about 10:00 p.m. on April 16, 1968. The appellant was arrested pursuant to a call to the police by an informer, Steve Shepard. The informer told the police that he had seen a man being held at gun point in a car which had stopped for gas at a gas station where he was present. The informer also described the make, model and color of the car and gave the car's license plate number. The arresting officers, having received a radio broadcast describing the car, stopped the car and arrested the appellant and his companion. The appellant was taken in custody. The following day Thomas Fisher, Jasper County Prosecutor executed an affidavit charging the appellant with the crime of kidnapping. The affidavit was sworn to by the complaining witness, Claise W. Tarrant and approved by the prosecutor. Pursuant to the charging affidavit an arrest warrant was issued, even though the Appellant was already under arrest.

Appellant first contends that the initial arrest was illegal because there was not probable cause for such arrest. Appellant has not preserved this question for our consideration, as he made no proper objection at any time. *Kelley* v. *State* (1958), 226 Ind. 148, 78 N. E. 2d 547 and *Beeler* v. *State* (1951), 230 Ind. 444, 104 N. E. 2d 744.

Appellant next contends that testimony of State Police Officer Lewis Wolfe pertaining to an identification tag which he

had allegedly attached to a shotgun, taken from the appellant's car at the time of the arrest, was inadmissible because the tag was not thereafter introduced into evidence and because it was the fruit of a search incident to an illegal arrest. This objection comes too late since the complaining witness, the arresting officer, and appellant's companion had all previously testified as to the existence of the shotgun in the car at the time of the arrest, without objection. The testimony of Officer Wolfe was merely cumulative and we find no merit in the contention. *Davis* v. *State* (1968), 251 Ind. 133, 239 N. E. 2d 601 and *Adams* v. *State* (1946), 224 Ind. 472, 69 N. E. 2d 61. Also, appellant's contention that the testimony of the State Police Officer was erroneously admitted into evidence because it was fruit of an illegal arrest is untenable because no objection was made based on that point, but only on the ground that the weapon was not offered in evidence. No objection was ever made that the testimony relating to the identification tag was inadmissible because it was obtained in the course of an illegal arrest. In *Tyler* v. *State* (1968), 250 Ind. 419, 422, 236 N. E. 2d 815, we stated: "We are compelled to hold that since the appellant failed to object at trial for the same reasons now being urged, he is deemed to have waived his alleged errors. One may not raise objections for the first time on appeal in this Court when there was afforded an ample opportunity to raise the objection during the course of the trial." See also: *Gernhart* v. *State* (1954), 233 Ind. 470, 120 N. E. 2d 265 and *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523. Thus for the reasons discussed above the appellant's contention is without merit.

Appellant next urges, that the affidavit charging him with the crime of kidnapping was fatally defective in that it did not set forth sufficient facts from which the court could find or establish probable cause for issuance of an arrest warrant. In this contention the appellant is in obvious error. The only instance where a "probable cause affidavit" must accompany a "charging affidavit", setting forth

the facts constituting probable cause, is where the person has not been arrested for commission of an alleged crime. Where a person has already been arrested by a police officer upon probable cause without an arrest warrant, as where a misdemeanor or felony was committed in his presence, or where he has probable cause to believe a felony has been or is being committed, the charging affidavit does not have to be accompanied by a probable cause affidavit. To require such would be purposeless. Appellant has erroneously cited *Kinnaird* v. *State* (1968), 251 Ind. 506, 242 N. E. 2d 500, on this point. Where probable cause is shown for the original arrest *Kinnaird* v. *State, supra,* is not applicable. Further, the appellant having been previously arrested, by a police officer on probable cause, was not prejudiced by the subsequent (and unnecessary) arrest warrant issued pursuant to a bare "charging affidavit". No search followed the issuance of the arrest warrant and the admissibility of no evidence is based upon the warrant. Further, this Court stated in *Dickens* v. *State* (1970), 254 Ind. 388, 260 N. E. 2d 578, "Even if an arrest is illegal, it has been held that it does not amount to a denial of due process. Further, there is authority for the proposition that an illegal arrest, in itself, in no way affects a judgment of conviction. *People* v. *Rose* (1961), 22 Ill. 2d 185, 174 N. E. 2d 673. The general rule also being that the jurisdiction of a court over the person of the defendant is not terminated by an illegal arrest . . ." On this point we stated in *Layton* v. *State* (1968), 251 Ind. 205, 209, 240 N. E. 2d 489, 491, that:

> "It seems that the appellant further contends that if the arrest was illegal, the mere fact in itself, if the appellant is tried, is sufficient grounds for a new trial. The illegality of the arrest affects only the admissibility of the evidence, as in the case of a search warrant. It does not affect the right of the state to try the appellant. The appellant fails to point out what the remedy would be if an appellant could not be tried merely because the arrest was illegal. Must he be set free in event of an illegal arrest? Must the defendant be returned and set free in California or on the steps of the courthouse and immediately rearrested

"under a valid warrant before he can be tried? We do not believe a court should engage in such futile and idle motions. To do so makes the judicial processes a laughing matter for the public."

For these reasons appellant's contention is of no merit and fails.

Finally appellant urges that the trial court erred in admitting into evidence, for impeachment purposes on cross-examination, a letter written by the appellant. During the cross-examination of the appellant, appellee introduced in evidence a letter written to one Eva Lou Norris by the appellant while in jail before his trial. While the letter was not crucially detrimental to the character of the appellant, or to the veracity of his testimony, it did offer some evidence impeachable in nature. Appellant had testified that he was a married man with several children and that the woman to whom the letter was written was just a friend. The letter disclosed that the relationship between the woman to whom the letter was written was perhaps more than just friendship. Appellant objected to the introduction of the letter in evidence on the ground that he had made a demand upon the prosecutor before trial for a complete list of witnesses and documents which the prosecution intended to use in the course of the trial, and that only a list of witnesses was produced by the prosecutor. We point out that no written demand, specific in nature, was made for the list of witnesses and documents, therefore there is nothing in the record from which we can determine specifically the request made. The record only alludes to an alleged agreement between the appellant's counsel and the prosecutor that a list of witnesses and documents intended to be used by the prosecution would be given to the appellant for preparation of his defense. In this regard, the pertinent testimony of appellant's counsel Mr. Tetek is as follows: ". . . that I had made a demand on the prosecuting attorney to furnish me with a complete list of witnesses and documents that he *intended* using in the course of this trial and he agreed to do so." The

prosecutor could not have known what documents or other evidence he *intended to use on cross-examination of the appellant, who might not take the stand,* therefore no error was committed by his failure to give the letter to the appellant before the trial. He could only have known what documents or other evidence he was going to use in the State's case in chief. To do as the appellant suggests would require the State to lay bare its entire case in advance of trial. Our conclusion here is in accord with our comment in *Bernard* v. *State* (1967), 248 Ind. 688, 692, 230 N. E. 2d 536, 540, as follows: "We do not require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition, . . ."

Judgment of the trial court is therefore affirmed.

Givan, Hunter, JJ., concur; DeBruler, J., concurs in result; Prentice, J., dissents with opinion.

### DISSENTING OPINION

PRENTICE, J.—I dissent to the majority opinion insofar as it permitted the letter from the defendant (appellant) to be admitted into evidence, and I think that the decision of the trial court should be reversed by reason of its admission.

The matter presents two basic questions for determination, namely: May a letter signed by the defendant be proper subject for discovery by the defendant, and how may the character of a witness be impeached? Necessarily involved are the distinctions to be drawn between a defendant in his capacity as the accused and in his capacity as a witness.

The evidence pertinent to a determination of these basic issues discloses that the defendant and David Lee, an accomplice and witness for the State, abducted Cloise Tarrant, the prosecuting witness, held him for some period of time at gunpoint, threatened to kill him and were so holding him at the time they were apprehended by police in response to an informer's call. There had been testimony by the accomplice that earlier in the evening he and the defendant had been drinking

beer together in the company of the accomplice's wife and Eva Lou Norris. There was no evidence that Eva Lou Norris had any connection with the crime or any prior knowledge of the intention of either the defendant or Lee to commit it. The only mention of her was with respect to the aforementioned persons having been together earlier in the evening.

Defendant took the stand in his own defense. He denied the abduction, threats and intent to harm Tarrant. He admitted to having been with Lee and Tarrant and to having had a discussion with Lee concerning a prior business transaction between them and over which there had been some misunderstandings; but he denied making any threat or even having had any argument with Tarrant on that occasion.

While incarcerated pending trial, the defendant wrote a letter to Eva Lou Norris and it found its way into the hands of the prosecutor and was admitted into evidence over Defendant's objection. This letter may have been relevant to the proceedings in either of two respects. First, it contained admissions indicating Defendant's guilt, and secondly it indicated the existence of an extra-marital affair between Defendant, a married man, and Eva Lou. In this connection, it could be said to reflect unfavorably upon his general moral character.

On cross-examination, the following questions, answers, objections and arguments took place:

" * * * * *

CROSS-EXAMINATION OF JOE RECTOR BY MR. FISHER:

Q. All buddies, huh Joe?
A. For fifteen years.
Q. Good buddies. Are you married Joe? You're married and have seven children?
A. Yes sir.
Q. *Real family man are you?*
A. *Well, my wife's right there, ask her.*
Q. *Are you a family man Joe?*
A. *Yes sir.*

Q. *You really stay at home and look after the family. do you?*

A. *Yes sir.*

Q. *No girl friend. Who's Eva Lou Norris, Joe?*

MR. TETEK: Now, just a second.

Q. Who is Eva Lou Norris?

MR. TETEK: Just a second now.

MR. FISHER: Make your objection.

MR. TETEK: Well, I will if you'll simmer down a little bit.

COURT: Yeah.

MR. TETEK: I move to strike the question from the record, your honor, unless the proper foundation is laid. I see no purpose in this questioning, this is completely irrelevant, it's immaterial to the issues before this court.

COURT: Well, this is cross-examination and this party has been named in testimony. In this particular case, I'm going to overrule the objection.

MR. TETEK: All right.

COURT: You may ask him. Do you understand? Who is she?

A. Friend, to Mr. Lee and his wife and me also, at the time. That's been two years ago, just about.

Q. *Eva Lou's an old girl friend is she Joe?*

A. *She was just a friend.*

Q. *No close relationship?*

A. *No close relationship.*

MR. FISHER: Woud you mark this please, state's exhibit five I believe.

Q. I'll show you what has been marked for identification as state's exhibit number five and I ask you if this is your signature?

A. Could be.

Q. Is that your signature?

COURT: Examine it carefully and remember now that you're under oath.

A. That could be my signature.

Q. Did you write this letter to Eva Lou Norris?

A. I don't know if I wrote that letter or not.

Q. Do you want to read it and make sure?

A. Yeah.

COURT: Read it carefully. Can you now answer the prosecutor's question?

A. Yes sir. I wrote the letter.

Q. You wrote this letter. Who is the letter to Mr. Rector?

A. It's to Eva Lou Norris.

Q. And I ask you what is written in the corners on the front page?

MR. TETEK: Well, just a second, I am, are you intending to introduce this in evidence?

MR. FISHER: Yes, I am intending to introduce this into evidence and I would now offer it as a letter written by Mr. Rector both for the purpose of impeachment and for an admission against him.

MR. TETEK: Well, now your honor, I, I'm going to give a legal argument and I presume you don't want me to do all this talking in front of the jury.

COURT: All right, I'll excuse the jury for awhile.

MR. TETEK: The record will show, either prior to your assuming jurisdiction on this charge, *that I had made a demand on the prosecuting attorney to furnish me with a complete list of all witnesses and documents that he intended using in the course of this trial and he agreed to do so.*

MR. FISHER: There was nothing, nothing was ever said about furnishing documents, your honor. I furnished the defendant with a list of witnesses which he asked for.

\* \* \* \* \*

COURT: \* \* \* *Now, in view of that fact, whether or not this particular letter was listed and I think, Mr. Fisher, that I'm going to agree with Mr. Tetek that the basis of our understanding last summer was that his discovery wouldn't have to be formal.*

MR. FISHER: This is right your honor.

COURT: *But I don't feel that this would be included in that even had it been formal. \* \* \* I agree with you that your motion would have included documents which would be used as evidence.*

MR. TETEK: That was one part of my objection.

COURT: All right.

MR. TETEK: I said, the other part of my objection is

that it is, it is completely immaterial to the case at charge.

COURT: That part the Court must agree with except on this matter—

MR. TETEK: I'll go a step further.

COURT: All right.

MR. TETEK: There has not been a proper foundation laid for the introduction at this time.

COURT: He just asked if there was any special relationship and the man said no, just a friend.

MR. TETEK: That's right. I heard—

COURT: Well, I haven't read this and I'm deliberately not doing so.

MR. TETEK: Well, I say, it's immaterial to the two affidavits that are charged here. I'm not saying that the prosecutor does not have the right to—

COURT: I will say this.

MR. TETEK: —impeach any witnesses—

COURT: In this I feel like nit-picking, the Court's aware of one other rule that hasn't mentioned— * * * (Interruption by outside party)

* * * I'm sorry sir, I lost my train of thought.

MR. TETEK: We were, at the point of interruption your honor, *I think we were talking in view of recent decisions that perhaps the defendant should be entitled to documents they intended to use.*

COURT: *I think this is true but I do not believe that* that, and if I am wrong I think it's going to take some additional decisions to prove it sir. That *this comes within the scope of that.* Mr. Fisher, you have a right to be heard no matter what the Court's indicated. What is your position and I want to hear it—."

From the foregoing, it is determined that the defendant objected to the introduction of the letter into evidence upon two grounds, i.e. that it had not been produced in accordance with the discovery agreement and that it was not admissible for impeachment. There was no formal motion, ruling or agreement with respect to the production of a list of State's witnesses and documents to be used at the trial, and the record is inconclusive as to what was covered. However, notwithstanding the prosecutor's denial that he had agreed to furnish

documents, I conclude from the foregoing quoted portion of the record that the court regarded the agreement of counsel as including documents; and I proceed upon the hypothesis that the State was required to furnish Defendant with such documents as were the proper subject for discovery.

The trial court admitted the evidence upon the premise that it was to be used for impeachment purposes, that the State could not have known in advance whether or not it would be used inasmuch as it had no way of knowing whether or not the defendant would testify, and, therefore, it was not the proper subject of discovery. It follows that if the evidence was not admissible for impeachment purposes, it was not admissible at all, inasmuch as it had not been furnished in response to the pre-trial agreement, which was the basis of the defendant's objection. Additionally, the State maintained that the letter was not a proper subject for discovery, inasmuch as it had been prepared by the defendant.

Leaving, for the moment, the impeachment aspect of the evidence and turning our attention to whether or not the defendant was otherwise entitled to its pre-trial disclosure, there appears to be no case in this state determining specifically that a defendant may compel the state to produce documents that he himself prepared; but no good reason appears why this question should not be determined by the same standards applicable to discovery in criminal cases in general, which standards have been recently declared in the cases of *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536; *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60, and *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873. Briefly stated, while discovery in favor of the accused is not required by the constitutional guarantee of due process, it has been recognized that within the general nature of a trial court is the inherent power to order various types of discovery. This power must be discretionary, since the trial court is often faced with two possible lines of action. However, the best modern authority holds this power not to be a full discretion but rather a lim-

ited one. To be entitled to utilize discovery proceedings against the State, the defendant must show that such is necessary to the preparation of his case, and upon such a showing discovery "should be granted, absent a more compelling showing by the people of facts tending to prove that such an order would unfairly hamper the prosecution or do a disservice to the public interest." *People* v. *Johnson* (1959), 356 Mich. 619, 628, 97 N. W. 2d 739, 744. "* * * We agree that the trial judge has limited discretion and that when a list of witnesses is requested it should be granted unless the State makes a showing of paramount interest over that of the defendant. * * *." *Bernard* v. *State, supra.* "* * * The rules of discovery applicable in civil proceedings in Indiana courts are not applicable as such in criminal proceedings. However, the techniques of discovery embodied in those rules will often be applicable in criminal proceedings and the trial court has the inherent power to implement such discovery techniques as are necessary to provide the defendant a full and fair hearing. * * *." *Antrobus* v. *State, supra.* "The interests of justice and society are best served by a full and complete disclosure of material evidence." *Dorsey* v. *State* (1970), 254 Ind. 409, 260 N. E. 2d 800, 806.

It does not appear that at the time the parties, in the presence and with the sanction of the court, agreed concerning the production of a list of witnesses and documents, any claim of a paramount interest and non-disclosure was made as to any documents or that any were excepted from the agreement. We cannot say that the trial court had no power to order the production of the letter, although it may be that it could not have been required to do so. Conversely, it is clear from the cases cited that it could, in its discretion, have ordered the production of the letter in question. In view of the circumstances, the defendant had every right to believe that the agreement extended to all witnesses and documents that were subject to discovery; and the trial court has indicated that this was the substance of the agreement. The State, then, was under com-

pulsion, by informal agreement sanctioned by the court, to produce the letter in question.

The trial court's basis for permitting the letter to be introduced into evidence was that it was for impeachment purposes only and accordingly would not have been subject to discovery. It also contained certain admissions which, if unexplained, could be devastating to the defense. If inadmissible for purposes of impeachment, which was the only reason given by the trial court for excluding it from the pale of the discovery agreement, it follows that the letter lay squarely within its ambit.

In ruling that the letter was admissible as impeaching evidence, the trial court had reference to its contents that reflected unfavorably upon the defendant's general moral character. By statute it is provided: "In all questions affecting the credibility of a witness, his general moral character may be given in evidence." (Acts of 1905, ch. 169, § 240, 1956 Repl. Burns Ind. Stat. § 9-1608, originally Acts of 1881, ch. 36, § 230.) Character evidence may relate to a witness or to a defendant, but the rules relating thereto are quite different. The character of an accused is not in issue and may not be attacked, unless he shall put it in issue by giving evidenc of his good character, at which time only evidence relating to that particular trait of character that is relevant to the crime charged is admissible; *Kahlenbeck* v. *State* (1888), 119 Ind. 118, 21 N. E. 460; and such moral character may be shown only by proof of general reputation, not by proof of specific acts of immorality. *Griffith* v. *State* (1894), 140 Ind. 163, 39 N. E. 440.

Prior to 1881, the defendant in a criminal trial was not a competent witness, thus character evidence with respect to him was admissible only as above stated. With his competency established by legislative enactment, however, (Acts of 1873, ch. 107, § 1, re-enacted by Acts of 1905, ch. 169, § 235, 1956 Repl. Burns Ind. Stat. § 9-1603) it became appropriate to at-

tack his character for truth and veracity, not as an accused but as a witness, which was first passed upon by this Court in *Fletcher* v. *State* (1874), 49 Ind. 124. In that case, this Court said:

"* * * Prior to such enactment, the rights of a defendant and the privileges of a witness were separate and distinct; but since its passage a defendant who elects to testify occupies the position of both defendant and witness, and thus he combines in his person the rights and privileges of both. But while this is true, we do not think it should result in any change in the law or rules of practice. In his capacity as a witness, he is entitled to the same rights, and is subject to the same rules, as any other witness. In his character of defendant, he has the same rights, and is entitled to the same protection, as were possessed and enjoyed by defendants in a criminal cause before the passage of the act in question. When we are considering the rights of the appellant in his character of defendant, we lose sight of the fact that he has the right to testify as a witness; and when his privileges as a witness are called in question, they should be decided without reference to the fact that he is a defendant also. * * *."

No particular confusion resulted from the Fletcher rule, but when the 1881 Act was passed authorizing the introduction of a witness' general moral character (reputation) into evidence upon the theory that it went to his credibility, the paradox was magnified. In the cases that followed, the first among them being *Robinson* v. *State* (1882), 84 Ind. 452, it has been held that the statute applies to the defendant, if he takes the stand as a witness, as well as to other witnesses. The rule appears to be one more of necessity than of reason, for it is unrealistic to expect the jurors to distinguish between the assailed as a witness and as a defendant and can be justified only in that to exclude the defendant from the statute's force would be to grant his testimony a credence not ascribed to that of other witnesses who may be equally as credible. Being a witness, he must be subjected to the same scrutiny as other witnesses. It follows logically that he, in his capacity as a witness should be accorded the same immunities as other witnesses, included among them that his character may be proven only by general

reputation, and not by specific acts, which is rendered all the more important by reason of his character as a defendant being unavoidably imperiled.

Character as used in this statutory provision means reputation, and it is the reputed general moral character of a witness or his general reputation that may be shown. *State* v. *Bloom* (1879), 68 Ind. 54.

Ordinarily a witness cannot be impeached by proof of particular extraneous acts of misconduct, and the moral character of a witness cannot be impeached by proof of specific acts of immorality. *Niemeyer* v. *McCarty, et al.* (1943), 221 Ind. 688, 51 N. E. 2d 365, 154 A. L. R. 115; *Griffith* v. *State, supra.*

Contrary to the rule that prevails in the case of giving evidence relative to the character of a defendant and precluding evidence of his bad reputation for a specific trait until he has first put his reputation in issue by presenting evidence to support it, the reputation of a witness for truth and veracity or for general moral character may be shown to overcome the presumption of his good general character and impeach his credibility; and the evidence of his good reputation may not be offered until an effort shall have first been made to impeach it. *Johnson* v. *State* (1863), 21 Ind. 329.

There are a variety of reasons why the letter was not admissible for impeachment. If it was intended to impeach the defendant's character for the trait related to the crime charged, it was inadmissible as being irrelevant to the trait of peace and quietude and for the further reason that defendant had not previously put such character into issue. If it was intended to impeach the defendant's character, as a witness, for truth and veracity it was inadmissible as being irrelevant to such traits. It has been held that evidence of the bad reputation of a female witness for virtue and chastity is not proper to impeach for general character for truth and veracity. *Kidwell* v. *State* (1878), 63 Ind. 384.

The evidence of Defendant's apparent affair with Eva Lou Norris, as disclosed by the letter, may reflect against his gen-

eral moral character; however, it would be his reputation for general morality with which we would be concerned on impeachment. As previously shown, he could not be impeached by proof of specific acts. *Niemeyer* v. *McCarty, supra,* and *Griffith* v. *State, supra.*

A proper ground for the use of the letter as impeaching evidence was not laid. The fact that the letter may have revealed a relationship that the defendant had denied would certainly discredit him, but it did not amount to an impeachment. If the State were to use the letter as impeaching evidence, it would have been first necessary for it to have asked the defendant if he had not written such a letter and to have fully identified it, thus giving him a full opportunity to refresh his memory and to admit to having written it, if he in fact did, or perhaps offer testimony to explain or qualify its meaning. If, under such circumstances, he denied having written the letter, it could have been introduced to impeach.

A witness may not be impeached by proof of his prior statements inconsistent with, or contradictory of, his testimony at the trial unless a foundation is first laid. In laying a foundation for the impeachment of a witness on the ground that he had made statements out of court different from those testified to, the witness must be questioned as to whether he did make such statements, in order that he may have the opportunity of denying, admitting, correcting or explaining them, and the time and place where the alleged inconsistent statements were made, as well as the person in whose presence they were made, must clearly be brought to the attention of the witness. 30 I.L.E. *Witnesses,* § 239 (1960), and cases there cited.

As previously mentioned, there was no evidence in the record in any way connecting Eva Lou Norris to the crime charged therefore, any matter relating to her was purely collateral to the issues of the case.

"* * * It is a rule as old as the law itself, subject to numerous exceptions, all of which fall so far short of the

facts in this case that we deem it unprofitable to notice them, that substantive evidence in both civil and criminal cases must be confined to the facts embraced within the issues joined, and that no such evidence is competent that does not form a link in the chain of proof which naturally and reasonably tends to establish some material fact in the case as made between the parties. * * * And the law will not permit the State to depart from the issue, and introduce evidence of other extraneous offenses or misconduct that have no natural connection with the pending charge, and which are calculated to prejudice the accused in his defense." *Dunn* v. *State* (1904), 162 Ind. 174, 70 N. E. 521.

As a general rule, a witness cannot be impeached by contradicting him as to collateral or immaterial matters and accordingly, where a party brings out such matters on cross-examination he may not contradict the witnesses' answers, but is bound by them. 30 I.L.E. *Witnesses*, § 252 (1960), and cases there cited. Where a witness is asked, on cross-examination, certain collateral and immaterial questions for the purpose of laying ground for an impeachment, the cross-examining party is bound by the witness' answers and cannot introduce evidence to show that the answers were false. *Stout* v. *State* (1910), 174 Ind. 395, 92 N. E. 161, and *Miller* v. *State* (1910), 174 Ind. 255, 91 N. E. 930 and cases there cited.

"The answers of a witness on cross-examination with reference to matters relevant to an issue are not conclusive and may be contradicted by independent proof for the purpose of impeachment. But it is firmly established that the answer of a witness on cross-examination as to a merely collateral matter is binding on the cross-examiner, and may not be contradicted. The principal reasons of the rule are, undoubtedly, that but for its enforcement the issues in a cause would be multiplied indefinitely, the real merits of the controversy would be lost sight of in the mass of testimony to immaterial points, the minds of jurors would thus be perplexed and confused, and their attention wearied and distracted, the costs of litigation would be enormously increased, and judicial investigations would become almost interminable." 58 Am. Jur. 433.

The test as to whether the matter is collateral is whether the party seeking to introduce it for the purposes of contradiction

would be entitled to prove it as a part of his case. 98 C.J.S. 654.

For the foregoing reasons, the letter was inadmissible in evidence, and the effect of the erroneous ruling was to put the defendant's general moral character in issue, without his consent. I cannot say that the jury were not influenced by such evidence or that it manifestly appears that the defendant was not prejudiced by such evidence. Accordingly, I would reverse the trial court.

NOTE.—Reported in 271 N. E. 2d 452.