Griffith v. The State.

Filed Jan. 10, 1895.

———————◆———————

No. 17,439.

GRIFFITH v. THE STATE.

EVIDENCE.—*Moral Character.*—*How Shown.*—Moral character can be shown only by proof of general reputation, and not by proof of particular acts of immorality.

SAME.—*Cross-Examination.* — *Direct or Redirect Examination.* —*Moral Character.* — *General Reputation.* — On cross-examination, great liberty is allowed in developing, illustrating, or contradicting whatever is brought out on direct examination; but on direct or redirect examination, one's general reputation only, as to his general moral character, can be given.

SAME.—*Admitting Proof of Particular Acts of Immorality.*—*Error not Harmless.*—Where character evidence is pretty evenly divided, the appellate tribunal can not say that error in admitting proof of particular acts of immorality, on redirect examination, was harmless.

From the Vigo Circuit Court.

*G. M. Faris* and *S. R. Hamill,* for appellant.

*W. A. Ketcham,* Attorney-General, *M. Moores, L. D. Leveque, J. Lee, F. A. McNutt, J. G. McNutt* and *C. McNutt,* for State.

HOWARD, J.—The appellant, a physician, was tried on

an indictment for assault and battery with intent to kill the prosecuting witness, and was found guilty of assault and battery with intent to commit manslaughter.

It is contended that the court erred in the admission of certain evidence, and in the giving of certain instructions.

The appellant was a witness in his own behalf. In rebuttal, the State introduced a great number of witnesses to prove that the general moral character of the appellant was bad.

The statute (section 1872, R. S. 1894; section 1803, R. S. 1881) provides that this may be done, "in all questions affecting the credibility of a witness."

Edgar D. Fagan was so called as an impeaching witness, and testified that the general reputation of appellant in the neighborhood in which he resided, for general moral character, was bad.

On cross-examination, it appeared that this witness, together with other witnesses for the prosecution, had been in consultation with the attorneys for the State before he was called as witness. Thereupon he was asked, in the cross-examination: "Whom did you ever hear say that his (appellant's) general reputation for morality was bad, outside of this consultation with the lawyers?" To which he answered: "Indeed I don't know that I could name any specific person."

On redirect examination, the following was asked of this witness:

"You were asked the question whether you had heard anybody outside of this consultation room say that they knew that his general reputation was bad. I will ask you if you ever heard anything else said about him?"

This question was objected to, "for the reason that it is not responsive to anything brought out on cross-examination; and a man's reputation for morality can not

be proven by proof of specific acts of immorality, or by proof of specific acts that persons may have heard concerning him." .

The court overruled the objection, and an exception was reserved to the ruling.

Similar questions were afterwards put, and like objection made and exception reserved.

To these questions the witness answered:

"Well, I have heard that he had practiced things in his profession that wasn't right."

"That he had caused or committed abortion."

"That when he was a justice of the peace over in Clay county, when a case was tried before him and the parties found guilty for misdemeanor, he would assess a fine of perhaps ten dollars and afterwards he would erase, disfigure it, and make it fifty cents, and keep the balance after the fine had been paid."

"I have heard a great deal about his fighting qualities."

"I have heard of the fights he has been into—rackets. I never saw him strike but one man."

"Generally speaking, I have heard of his fighting a great deal, as being a fighter and bully. Always into trouble and fights."

Of these questions and answers counsel for appellant well say: "Every man is supposed to be able to support his general character, but there is no presumption that he shall be ready to answer every particular charge that some witness may claim to have heard against him."

These collateral charges could not of course be disproved on this trial, and were in fact not disproved, the court rightfully refusing to admit evidence offered by appellant in denial or explanation of the charges.

To have admitted evidence for or against such charges would have been to try appellant for numerous offenses

in addition to that for which he was under indictment. The reason given by the court in refusing to admit evidence to show that appellant was innocent of the collateral charges made against him was as follows:

"The ground on which I refuse to allow these questions to be answered is that it was not the question of the probability of the charges, but it was the question whether these charges had been made."

While the court was undoubtedly justified, as we have said, in refusing to admit testimony in denial of collateral charges against the defendant, yet it would seem that there was, therefore, the greater reason why the charges themselves should never have been made. Certainly no good reason can be given why, in a court of justice, one may be charged, even by report, with a crime and yet be refused the opportunity of refuting such charge.

In truth, those specific charges of wrongdoing should never have been allowed. The appellant having offered himself as a witness, it was competent for the State, as affecting his credibility as such witness, to show that his general moral character was not good. But moral character can be shown only by proof of general reputation; and not by proof of particular acts of immorality. *Long* v. *Morrison*, 14 Ind. 595; *Rawles* v. *State, ex rel.*, 56 Ind. 433; *Cunningham* v. *State, ex rel.*, 65 Ind. 377; *Meyncke* v. *State, ex rel.*, 68 Ind. 401; *Robinson* v. *State*, 84 Ind. 452; *Bessette* v. *State*, 101 Ind. 85; *Spencer* v. *Robbins*, 106 Ind. 580; *Drew* v. *State*, 124 Ind. 9.

On cross-examination, great liberty is allowed in developing, illustrating or contradicting whatever is brought out on direct examination; but, on direct or redirect examination, one's general reputation only, as to his general moral character, can be given. In this case, had the appellant been giving evidence to show that his

general moral character was good, undoubtedly much of the evidence here objected to might have been brought out by the State on cross-examination. On direct or re-direct examination, however, the State had no right to make proof of reports against him as to specific acts of immorality.

Neither is it true, as counsel for the State contend, that the evidence objected to was justified by anything in the cross-examination of the witness Fagan. Counsel for appellant had asked Fagan whether he had heard any one, except the lawyers in consultation, say that appellant's general reputation for morality was bad. This was a legitimate question in cross-examination, but gave no right in re-direct examination to bring out in detail reports of specific acts of immorality. The State could only prove appellant's general reputation for general immoral character; just as appellant himself might prove his general reputation for general moral character. Either party, on cross-examination, might then test the knowledge, fairness and credibility of the witness by questions as to reports of particular conduct going to show that the proof of general good or bad moral character was or was not established.

Like evidence given by other witnesses for the State is objected to; but we do not think that we need farther refer to it.

Neither do we think that we need to enter into an examination of the questions raised as to instructions given or refused; though we might say that there is grave doubt whether we should be able to uphold the judgment on this ground, even if there was no question as to the admission of evidence.

The doubt in the case was as to the intent of the appellant in shooting the prosecuting witness, and as to whether he acted in self-defense or was actuated by an

intention to commit a crime.    It may, perhaps, be ad-
mitted that the evidence, on the whole, seems to show a
wanton act of violence by a drunken man;  but the ques-
tion is not, by any means, free from doubt.    In such a
case, the proof of moral character was of the utmost im-
portance.    This character evidence was pretty evenly di-
vided, over twenty witnesses swearing that appellant's
general moral character was good, and an equal number
swearing that it was bad.    In such a case, we can not
say that the error of admitting the evidence in question
was harmless.    That evidence may have been sufficient
to remove a reasonable doubt, which might otherwise
existed in the mind of the jury as to the guilt of the ac-
cused.

The judgment is reversed, with instructions to grant
a new trial; and the clerk is directed to issue the proper
order for the return of the appellant.

Filed Jan. 9, 1895.