BIVINS *v.* STATE OF INDIANA.

[No. 569S101. Filed June 1, 1970. Rehearing denied with opinion July 30, 1970.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General and *William F. Thompson,* Assistant Attorney General, for appellee.

ARTERBURN, J.—Appellant and three other men were indicted for first degree murder and first degree murder by killing in the perpetration of a felony. The issues were submitted to a jury and appellant was found guilty on both counts and sentenced to life imprisonment.

All four of the men indicted, Smith, Mayberry, McElwain and the appellant, entered pleas of not guilty. Smith and the appellant were tried together. Mayberry and McElwain testified as State's witnesses at the trial.

The facts are briefly these: On the afternoon of November 2, 1967, the appellant stopped by the home of Mayberry. Mayberry asked for a ride to a nearby school. Upon entering appellant's car, Mayberry found McElwain and Smith therein. Appellant started discussing a robbery with McElwain and Smith. Appellant instructed Mayberry to drive the car and directed him to an alley adjacent to a hardware store. Mayberry waited in the car while appellant and the other two men entered the store.

Once in the hardware store, appellant made a purchase. When the clerk opened the cash register to record the sale,

he was attacked by the appellant. The appellant called to his companions for assistance. Help came in the form of three rapid gunshots. The clerk fell to the floor wounded. The three men fled the store with the money from the cash register. McElwain testified that as the three of them ran out of the store "I saw the gun down at Will Smith's side."

It is argued that there is insufficient evidence to establish the cause of the clerk's death. The argument is that the victim had a history of heart attacks and that there is insufficient evidence to support a finding that he died as the result of the gunshot wounds as charged in the indictment. We disagree for two reasons.

First, we believe there is ample evidence to support a finding that the victim died as the direct result of the wounds inflicted during the robbery. The physician who was in the emergency room of the Marion County General Hospital testified that the victim was received in critical condition; that he had lost a considerable amount of blood from three gunshot wounds, one above the right clavicle, one about mid-chest and one to the left side of the abdomen; that surgery was performed; that the victim was in critical condition as the result of the multiple wounds; and that he died ten days later.

There was further testimony from the victim's personal physician that the decedent had a heart attack in 1962 and another in 1965, but that on November 1, 1967, one day before the robbery and shooting, he had occasion to examine the decedent and found him in "very satisfactory" condition. There were no "abnormal physicial findings".

In addition, the physician who performed the autopsy on the decedent testified in pertinent part as follows:

"Q. Now, Doctor as a result of this autopsy which you performed and your medical experience as a pathologist do you have an opinion as to the cause of death of Forrest Arthur, Jr., Forrest Arthur, I'm sorry?

"A. It is my opinion that Forrest Arthur died of arteriolo-sclerotic [sic] heart disease due to gunshot wounds.

"Q. Cause by gunshot wounds?

"A. Well, complicated by gunshot wounds.

"Q. Now let me ask you, in your medical opinion would Forrest Arthur have died without those gunshot wounds?

"A. *In my opinion he would not have died without the gunshot wounds.*

"MR. WILSON: Your witness.

"THE COURT: Cross examine, Mr. Taylor.

"CROSS EXAMINATION

"QUESTIONS BY MR. TAYLOR, COUNSEL FOR William Bivins.

"Q. Doctor, could you say of certainty that he would not have died, having had previous heart attacks, had he not been shot?

"A. Not with certainty, I couldn't say that for anyone in the room.

"Q. Now suppose that he had been in a scuffle and had been knocked to the—this is a hypothetical question—that he had been in a scuffle with a person and had been knocked to the ground, or the floor, and having been subject to heart seizures heretofore, as has been testified to here in this case, would that in and of itself tend to make his condition more susceptible to death from a heart attack?

"A. It could, yes, sir.

"MR. TAYLOR: I believe that is all.

"THE COURT: Mr. Kern.

"CROSS EXAMINATION

"QUESTIONS BY MR. KERN, counsel for William Smith.

"Q. Doctor, do these photographs depict one, two or three gunshot wounds?

"A. Two.

"Q. These two photographs depict two gunshot wounds?

"A. Two.

"Q. These two photographs depict two gunshot wounds?

"A. Yes sir.

"Q. Now is it your testimony that Forrest Arthur could have died from this heart condition without any traumatic experience, that there is a possibility that he could have died from this heart condition without any traumatic experience?

"A. Yes, sir.

"Q. Death could have resulted, that is a possibility?

"A. Yes, sir.

"MR. KERN: We have no further questions, Your Honor.

"THE COURT: Redirect.

"REDIRECT EXAMINATION

"QUESTIONS BY MR. WILSON, deputy prosecutor.

"Q. Doctor, was Forrest Arthur a human being?

"A. Yes, sir.

"Q. Also assuming that Forrest Arthur had been given a complete physical examination the day prior to November second, 1967, or the day prior to sustaining the gunshot wounds, could you say with reasonable, and that he passed this physical with the doctor giving him a clean bill of health, so to speak, finding no abnormalities, could you say with reasonable medical certainty that if he died on November twelfth, after sustaining the gunshot wounds, that he died as a result of the gunshot wounds?

"A. *It is my opinion that he died of the gunshot wounds.* (Emphasis Added) "MR. WILSON: No further questions."

Secondly, the appellant is responsible for the death of the decedent *if the injury by him contributed to the death of the person injured. The fact that other causes may also* have contributed to the death does not relieve the actor of responsibility. *Wahl* v. *State* (1951), 229 Ind. 521, 98 N. E. 2d 671; *Hicks* v. *State* (1937), 213 Ind. 277, 11 N. E. 2d 171, cert. denied 304 U. S. 564, 58 S. Ct. 951, 82 L. Ed. 1531; *Kelley* v. *State* (1876), 53 Ind. 311. It cannot seriously be argued, in view of the above expert testimony, that there was insufficient evidence from which the jury could

infer that the multiple wounds inflicted upon the decedent contributed mediately or immediately to his death.

Appellant further argues that the opinion of the physician who performed the autopsy is insufficient as it relates to the cause of death because it is based on mere conjecture and unsupported by fact. We find that the opinion of this medical expert was based upon facts which were clearly presented to the jury. The expert had conducted a thorough and complete autopsy upon the body and had seen for himself where the bullets had penetrated the inner organs and the nature and extent of the damage caused thereby. He testified extensively concerning the autospy, which was the basis for his opinion. It cannot be said that the facts supporting his opinion were not revealed. We further note that at no point did appellant object to the opinion expressed as being made without revealing the facts upon which it was based nor on cross examination was the basis of the opinion challenged.

Appellant next states the opinion of the psysician as to the cause of death was improper as going to prove the ultimate fact in issue. This argument is made in spite of the fact that appellant asked the same type of questions on cross examination. The opinion of a physician as an expert may be admitted to show the cause of death. Jones on Evidence 5th Ed., § 424, p. 801; 136 ALR 965; 31 Am. Jur. 2d, *Expert and Opinion Evidence* § 111, p. 640.

It is next argued that the trial court committed reversible error in refusing to give to the jury the appellant's tendered instruction No. 1 which reads:

"At all times during the pendency of this cause of action there was a statute enacted by the General Assembly of the State of Indiana and found in Acts 1905, Chapter 169, Sec. 126, p. 584, which reads as follows: 'All offenses other than murder or treason shall be bailable by sufficient sureties. Murder or treason shall not be bailable when proof is evident or the presumption is strong.' Burns' 9-1015."

The argument is that two of the appellant's accomplices in the crime, Mayberry and McElwain, testified against the appellant; that these two men were also under indictment for two counts of murder; that they were free on bond; that in view of the above statute it could be inferred they were freed in exchange for their testimony; and that this was material as it impeached the credibility of the testimony of these two men and the jury should have been so informed. We find no reversible error. There is no evidence to support the contention.

To the contrary, the two witnesses denied, upon questioning, that their testimony had been induced by promises or consideration. Appellant may not speculate as to the circumstances surrounding their release on bail without any evidence of the same being in the record and then request an instruction dealing with such an unsubstantiated inference.

Judgment is affirmed.

Hunter, C.J., Givan and DeBruler, JJ., concur. Jackson, J., concurs in result.

NOTE.—Reported in 258 N. E. 2d 644.