JAMES EARL MORRIS *v*. STATE OF INDIANA.

[No. 1075S303.  Filed July 7, 1977.]

*John T. Manning,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant was found guilty of second degree murder by a jury on May 5, 1975, and sentenced to fifteen to twenty-five years of imprisonment. The case stems from the discovery by two juveniles, on the morning of September 21, 1974, of a man later identified as John D. Gunnells lying in an unconscious condition at the Prairie Creek Reservoir in Delaware County. There were severe lacerations and injuries to his head and skull from which he never regained consciousness. Gunnells finally languished and died in December of 1974. There was testimony at the trial that the defendant was seen in the company of the victim and one James Lapeer in the Pastime Bar in Muncie the night before.

Appellant presents nine specifications of error on which he seeks reversal of his conviction in the trial court: (1) denial of change of venue from the county because of newspaper publicity; (2) method of selecting jury panel and forcing both defendants to share ten peremptory challenges; (3) admission of co-defendant's statement when he was visibly ill; (4) use of defendant's silence after being given *Miranda* warnings and without signing waiver; (5) search and seizure of defendant's auto and items therein; (6) failure to prove malice of defendant; (7) admission of conversation between defendant and victim; (8) refusal of court to admit evidence of prior specific acts of co-defendant Lapeer; (9) denial of sleep and refreshments to jury.

I.

Appellant Morris filed a motion for change of venue from the county on February 28, 1975, alleging that prejudicial publicity in the local paper, the Muncie Press, had so polluted

the community with the suggestion of his guilt that an impartial jury selection was impossible in the community. The motion was heard on March 3, 1975, the date set for trial in this cause. The appellant admits that his motion was filed late, as it was more than ten days after the date on which the cause was set for trial. He claims, however, to come under the provision of having filed said motion within ten days after becoming aware of the coverage in the press. The motion was based on articles appearing in the local press on February 25 and 26, in which it was reported both that appellant had filed a motion to suppress evidence and had contended that searches of his automobile and his apartment were conducted by the Muncie police without search and seizure warrants and against his wishes. It was appellant's contention that the February 25 and 26 articles became prejudicial because they had a cumulative effect of publicity from September, on the day after the victim was found unconscious, until the present time and represented a total picture of prejudice that would contaminate the minds of any citizens who might be selected for a jury. Appellant's motion for change of venue from the county was denied and trial was had beginning on April 15, 1975.

The record shows that on voir dire examination several of the jurors said they had seen and read the articles in the newspaper, but all of them said they were not influenced by the articles and would be in a position to base their judgment solely on the evidence and testimony they heard at the trial. Additionally, appellant made one challenge for cause which he summarily withdrew and made no other challenge either for cause or peremptorily to any of the jurors. At the close of the voir dire examination, appellant Morris accepted the jury. Since it appears in the record that the jurors were not influenced by the press coverage, and more particularly since the defendant raised no question by challenging the jurors and by finally accepting them, no question is presented to this court on this issue.

The appellant again raised the question of newspaper publicity during the trial and moved for a mistrial on that basis. The record shows that the trial judge examined the jury in open court, and each juror informed the court that he or she had not even seen the article in question. The court therefore properly denied the motion for mistrial.

## II.

Appellant argues that the selection of the panel of veniremen was unconstitutional in that it was done under provision of Ind. Code § 33-4-5-2 (Burns 1975), which provides for the jury commissioners drawing the veniremen from the tax rolls and duplicates. This issue was decided by this court in *Taylor* v. *State*, (1973) 260 Ind. 264, 295 N.E.2d 600, *cert. denied*. 414 U.S. 1012, 94 S.Ct. 377. In *Taylor* the court held the use of a list of property taxpayers which represented a reasonable cross-section of the county did not violate the rights of the accused, in the absence of a showing that the use of the list was a deliberate attempt to exclude certain groups from jury selection. Further, in *State ex rel. Brune* v. *Vanderburgh Circuit Court*, (1971) 255 Ind. 505, 265 N.E.2d 524, this court upheld the trial judge when he made a finding that use of the tax rolls and duplicates did not provide a sufficient list to obtain a reasonable cross-section of the county, and directed the jury commissioners to draw the names from the voting list of the county. There is no evidence in the record here to show which list or method was used to select the veniremen in this case, either the tax rolls or the voter list. Appellant has filed no affidavits or documentation of any kind to show what method was used in selecting the veniremen in this cause. We therefore have only the statement of counsel in the brief that the tax rolls and duplicates were in fact used as a source of selecting veniremen, and that such list presented an unfair cross-section of the community. Since the appellant failed to present a sufficient record, any alleged error on this

subject is not available for review by this court. *State* v. *Irvin,* (1973) 259 Ind. 610, 291 N.E.2d 70.

Appellant also argues that the court erred in limiting both himself and co-defendant Lapeer to ten peremptory challenges between them. As stated in part I of this opinion, above, defendant made no peremptory challenges during jury selection and accepted the jury at the close of voir dire examination. Further, defendants tried jointly must share their challenges and are together entitled to the same number one would have if tried separately. *Swininger* v. *State,* (1976) 265 Ind. 136, 352 N.E.2d 473; *Lund* v. *State,* (1976) 264 Ind. 428, 345 N.E.2d 826.

### III.

Appellant Morris next raises the question that the statement given by co-defendant Lapeer, which was admitted into evidence, was suspect in that it was taken after Lapeer had been given two shots of vodka by the police.

The record shows that Lapeer was feeling ill and upset at the time police talked to him and he asked them for something to drink to settle his nerves. It is admitted that the police did give him two shots of vodka and that he became noticeably more settled and was able to go on, discuss the issue with the police, and finally give them the statement in question. Lapeer himself stated that he had asked for the drink because he was shook up about what he had seen, and that the drink did not affect his faculties and he was able to recall all that had happened. Lapeer testified at the trial, and appellant did cross-examine him on both his recollections of the incident and the statement he had given to the police. It would appear that the issue is not one of admissibility but rather of weight and credibility of Lapeer's testimony. The trier of fact was given all of the facts surrounding the giving of the statement. The jury was able to hear and observe the demeanor of appellant and all of the witnesses as they testified about the incident described in Lapeer's statement.

The appellant further argues that this alleged denial of rights was compounded by the trial court's refusal to give the following instruction:

"The testimony of the co-defendant Lapeer who was discharged during the trial to testify for the State should because of its very nature be cautiously received and carefully scrutinized by you and it should be weighed according to its credibility."

The court refused this instruction but did, however, give a general instruction at the request of appellant on the credibility of witnesses. In *Turner* v. *State*, (1972) 259 Ind. 267, 260 N.E.2d 621, the defendant's tendered instruction was similar to the one denied here. In ruling that the denial of the instruction was proper this court stated that it was "improper for a trial court to invade the province of the jury by commenting on the competency of or the weight to be given to the testimony of any particular witness who testifies in a case." *Lewis* v. *State*, (1976) 264 Ind. 288, 342 N.E.2d 859; *Evans* v. *State*, (1973) 261 Ind. 148, 300 N.E.2d 882. We find no error in either of these specifications.

## IV.

Appellant next asserts that the police violated defendant's right to remain silent in that after being given his *Miranda* rights warning by the police, he refused to sign the waiver form submitted to him by the police. The record does not show that at any time the defendant stated to the police that he did not want to answer the questions or that he refused to answer any of the questions put to him by the police. He did not remain silent but discussed the facts in this case with the police freely. Appellant relies on *Doyle* v. *Ohio*, (1976) 426 U.S. 610, 96 S.Ct. 2240. In that case both defendants chose to remain silent after being given their *Miranda* rights by the police. Subsequently on direct examination, the defendants testified to facts which would have been an alibi to the commission of the crime in question. The court stated

that "a state prosecutor may not seek to impeach a defendant's exculpatory story told for the first time at trial by cross-examination of the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest: use of a defendant's post-arrest silence in such a manner violates due process." In *Doyle*, the prosecutor did cross-examine the defendants in regard to their exculpatory story given at time of trial and inquire of them why they did not tell this story to police. The court found, as indicated above, that defendants had a right to remain silent at the time of their *Miranda* warnings and to permit the prosecutor to cross-examine them on their silence then as compared with their testimony in court would be to put a penalty on their silence.

In this case, the appellant did not remain silent and did not indicate that he wished to do so. On the contrary, he discussed this cause with police and the police were permitted to testify as to the statements given to them. The appellant does not claim that *Miranda* warnings were not given to him prior to the time he gave his statements. The only allegation is that he did not sign a written form waiving those rights. The court properly found that the willingness of the appellant to discuss the matter with the police and give the statements put into evidence was a sufficient waiver to make them admissible at the trial.

## V

The appellant next claims that there was an illegal search of his automobile and seizure of items therein which were subsequently put into evidence in this cause. The facts incident to the obtaining of these items can be stated as follows. Officers Stonebraker and Winkle went to the residence of appellant Morris when he became a suspect in their investigation. In the parking lot adjacent to appellant's apartment they saw an automobile which matched the description given to them by witnesses. As they walked by

the automobile they looked through the window and could see stains on the upholstery that appeared to them to be blood stains, and further observed beer cans lying about the car that were the brand given by witnesses as being in the possession of the victim and the two defendants, Lapeer and Morris. The officers went to Morris' residence and spoke to him briefly. They advised him that he was a suspect in this cause and informed him of his rights. They asked appellant if he had any objections to being interviewed, and he said no. They asked him if he objected to his car being searched, and again he said no. The officers stated on the stand that they did not search Morris' car at that time as they did not have with them a written waiver form, and decided to wait until they could get a search warrant to do so. However, Officer Stonebraker asked appellant at that time if he objected to Officer Winkle driving his car down to the station at the time he was to accompany them, as they wished to impound the car and its contents. The appellant said he had no objection to their doing so and handed Officer Winkle the keys to his automobile. Officer Winkle did drive the automobile down to the station and parked it in the parking lot adjacent to the police station. A search warrant was later issued and the items in question were then obtained, marked and put into evidence in this cause.

None of these facts are disputed by appellant. His contention is that the purposeful looking of the officers into the window of the automobile to obtain the information for probable cause to obtain a search warrant was in itself an improper and illegal search. The appellant seems to proffer a theory that officers can use information they gain from observing evidence from the outside of a vehicle in a casual manner or by happenstance as probable cause to obtain a search warrant, but, if an officer purposely looks into the window and sees it then it is an illegal search. In the leading case of *Alcorn* v. *State*, (1970) 255 Ind. 491, 265 N.E.2d 413, this court held that it is not a search to observe what is open to view. Since the stains and cans were

open to view in this cause the state did not search and there has been no violation of the appellant's fourth amendment rights. The court properly allowed into evidence the items found in the automobile.

## VI.

The appellant next charges that the state failed to prove the cause of death and failed to prove the element of malice. We will discuss each of these issues separately.

Dr. Nicholas, a physician and a coroner of Marion County was allowed to testify that in his opinion the victim died from the wounds received by the blows on the head. He testified that one Dr. Esparza had been a member of his staff in the coroner's office and had done the autopsy on the victim and filed an autopsy report. Dr. Nicholas further testified that Dr. Esparza had died the very morning that he was to testify. By agreement of the parties, medical records and findings by the doctors treating the victim from the time of his injury to the time of his death were admitted into evidence and read to the jury. Dr. Nicholas further testified that he examined said records and the autopsy report filed by Dr. Esparza, and that in his opinion the death of the victim was caused by the blows on the head received in connection with this incident. The autopsy report was not put into evidence.

Appellant further raised the question that the medical report showed the victim had a gastrointestinal condition; he claims that the evidence did not discount this as a cause of death. In *Bivens* v. *State*, (1972) 254 Ind. 184, 258 N.E.2d 644, the defendant similarly argued that the death could have been caused by a heart attack rather than gunshot wounds. In finding that the evidence was sufficient, this court ruled: "The fact that other causes may also have contributed to the death does not relieve the actor of responsibility." Both in the *Bivens* case and in *Smith* v. *State*, (1972) 259 Ind. 187, 285 N.E.2d 275, this court has held that a medical doctor can give an opinion as to the cause of death even though his opinion is partially based

upon records not in evidence. His testimony is one of expert opinion only and can be used by the jury along with all other evidence to reach the ultimate question of the cause of death. There was ample evidence in this cause from which the jury could find that the victim did in fact die from the wounds he received by the blows of the hammer by Appellant Morris. Co-defendant Lapeer described the blows and the effect they had of splitting the skull of the victim. The medical reports amply show that the skull was crushed and the brain was protruding from several areas when the victim arrived at the hospital. These reports further show that the victim remained comatose during all of that period and responded only slightly until the time of his death in December.

Appellant further charges that his conviction of second degree murder should be reduced to manslaughter since no malice was proved. He states that the facts indicate that his act was committed on a sudden spur of passion, and relies on a number of cases dating from 1868 to 1908 describing and defining said defense.

In *State* v. *Brown,* (1975) 263 Ind. 77, 324 N.E.2d 266, this court found that where there was evidence that a period of time elapsed between the struggle and the killing, the jury could find the killing was not in a sudden heat of passion. This court has further held on numerous occasions that malice can be inferred from the use of a deadly weapon in a manner likely to cause death. *See, e.g., Dozier* v. *State,* (1976) 264 Ind. 329, 343 N.E.2d 783; *Chatman* v. *State,* (1975) 263 Ind. 531, 334 N.E.2d 673; *Jones* v. *State,* (1970) 253 Ind. 456, 255 N.E.2d 105. While it may be argued that a hammer is not normally a deadly weapon, this court has held that instrumentalities that are harmless in their general usage may nevertheless be regarded as lethal when utilized in a harmful manner. *Covington* v. *State,* (1975) 262 Ind. 636, 322 N.E.2d 705, 708. The jury heard all of the evidence and determined that the defendant was guilty of second degree murder. That finding was proper, and we will not disturb it on appeal.

## VII.

The appellant's next argument is that the trial court erred in admitting testimony of a conversation between himself and the victim shortly before the killing. Appellant's reason why the evidence should not be admitted is that its probative weight is light and its prejudicial impact is great. The testimony which appellant complains of was to the effect that the victim asked him for a way to New Castle, and the appellant offered to give him a way there and the two left together. It is a well-established rule that any evidence which tends to prove a fact is relevant. *Cooper* v. *State*, (1974) 261 Ind. 659, 309 N.E.2d 807; *McPherson* v. *State*, (1969) 253 Ind. 254, 253 N.E.2d 226; *Anderson* v. *State*, (1933) 205 Ind. 607, 186 N.E. 316. The testimony objected to is relevant since it shows that appellant left with the victim and tends to prove that he was in fact the one who killed him. This, again, goes to the weight of the testimony and not the admissibility. It was up to the jury to determine what weight to give it. The trial court properly admitted such testimony.

## VIII.

Appellant Morris next objects that specific acts of misconduct of co-defendant Lapeer were not permitted into evidence. Witness Foster testified that he observed Lapeer stealing a fan from his home, but had already testified that he had no conversation with Lapeer at the time. Furthermore, appellant made no offer to prove and therefore waived any error that might have been committed by the court refusing any further testimony on the subject. *Chatman, supra; Marposon* v. *State*, (1972) 259 Ind. 426, 287 N.E. 2d 857. Sheriff Stockton from Tennessee attempted to testify that Lapeer had been involved in a fight in his county, but that he was never charged or convicted of anything. Such testimony was not allowed by the trial court. Appellant argues that he should be allowed to use these acts as evidence in support

of his theory that Lapeer was in fact the killer in the incident in question. Sheriff Stockton did not in fact see the fight and could only testify about it from hearsay. These unrelated specific acts could in no way lend credence to the theory that Lapeer was in fact the killer. They could, at best, be said to be facts which might tend to impeach the witness by showing his general reputation for criminal activity. It is well settled, of course, that a witness cannot be impeached by single events, but rather such must be done by proving his general reputation. *Boles* v. *State,* (1973) 259 Ind. 661, 291 N.E.2d 357; *Polson* v. *State,* (1965) 246 Ind. 674, 207 N.E.2d 638; *Griffin* v. *State,* (1895) 140 Ind. 163, 39 N.E. 440. This evidence was properly excluded by the trial court.

## IX.

The appellant finally argues that the trial court erred in that it communicated with the jury outside his presence, and further refused the jury's request for sleep and coffee. It is difficult to understand why appellant raises the issue in this court as to the communication of the judge with the jury, since there is absolutely no evidence in the record to show that the court did so.

Appellant's attorney, John Manning, stated in open court that he did not know that there was such a conference, and that he thought he understood the judge to say there was one at some time. The prosecuting attorney, Mr. Jordan, said he was present and it did not happen. The court emphatically stated that he did not confer with the jury and that he resented the implication. There is no further evidence or reference to this matter anywhere in the record and it has no place in this appeal.

Further error is alleged in that at 3:30 a.m., the jury asked if it would be possible for them to go to a motel and sleep and/or to have some coffee. The trial court stated that at that time of the morning in the city of Muncie there were no motels or restaurants open, and it was

impossible to grant the jury's request. It is, of course, the duty and responsibility of the trial judge to manage the trial and the jury. Decisions such as this are within his discretion to make, and such decisions will not be disturbed by this court absent a showing that he abused his discretion. There is no showing in the record that this incident in any way influenced the jury in their decision. There is only the naked statement that it happened.

Finding no error, we affirm the trial court in all the specifications.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs with opinion.

## CONCURRING OPINION

DeBruler, J.—I agree that introduction of appellant's post-arrest statements, in which he denied knowing the victim, was not prohibited by *Doyle* v. *Ohio*, (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. I do not believe a consideration of whether these statements were obtained in violation of *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is necessary to the disposition of this issue, because appellant does not argue that *Miranda* rendered his statements inadmissible.

NOTE.—Reported at 364 N.E.2d 132.