Lonnie **WICKLIFFE**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 1279S358.

Supreme Court of Indiana.

Aug. 19, 1981.

Nile Stanton, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Wickliffe was convicted of first-degree murder at the conclusion of a

jury trial in Marion Criminal Court on September 26, 1975. He was sentenced to life imprisonment. The crime in question occurred on or about May 8, 1974, when the defendant, along with another individual, broke into the home of the victim with the intent to commit burglary. The victim was beaten and stabbed by the two men and eventually shot and killed. Wickliffe and Powell were tried together for the crime in May, 1975, but that trial resulted in a hung jury. Appellant was then tried separately from Powell, and his appeal stems from that trial and subsequent conviction.

Five errors are asserted by the defendant, concerning: (1) whether the trial court's voir dire procedures denied defendant fundamental fairness and due process of law; (2) whether the trial court erred in admitting into evidence the out-of-court statements of, and testimony as to the acts of, former co-defendant Powell; (3) whether the trial court erred in admitting the testimony of Dr. James Benz, who relied for part of his testimony upon the autopsy report prepared by another doctor who did not testify; (4) whether there was, as a matter of law, sufficient evidence to sustain defendant's felony-murder conviction; and (5) whether the cumulative effect of the above-alleged errors denied defendant fundamental fairness and due process of law.

### I.

■ Appellant's first issue deals with the voir dire procedure of the trial court. The court conducted the first part of the jury selection by questioning the entire body of prospective jurors. The trial court then gave each side twenty minutes to examine the jurors seated in the jury box only. Any further voir dire examination would be by the trial court on its own or from questions submitted in writing by the attorneys. Appellant feels that the imposed twenty minute limit was not sufficient time to conduct voir dire in a situation such as this involving first-degree murder.

We have decided in earlier cases that the trial court has broad discretionary powers to regulate the voir dire's form and sub-stance, *Roberts v. State*, (1978) 268 Ind. 127, 130, 373 N.E.2d 1103, 1106; *Bradberry v. State*, (1977) 266 Ind. 530, 535, 364 N.E.2d 1183, 1186, and that a twenty minute limit on voir dire was not an abuse of the court's discretion. *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 451; *Hart v. State*, (1976) 265 Ind. 145, 151, 352 N.E.2d 712, 716. The existence of the first-degree murder charge does not indicate an abuse of the voir dire procedure since both *Lynn, supra,* and *Roberts, supra,* also involved first-degree murder convictions. We find that the above cases are controlling on this issue, and thus there is no error in the court's general conduct of voir dire.

### II.

■ During the trial, several of the State's witnesses were permitted to testify that former co-defendant Powell made statements pertaining to the homicide in question. Richard Carter testified that on the day after the slaying, Edmund Powell, in the presence of appellant and others, stated that he (Powell) "dug the shit out of the way Lonnie stabbed that nigger" and that Powell and appellant engaged in hand-clapping. Carter also testified that Powell mentioned going to "this guy's house" and "pulling the door off" and that "Lonnie was stabbing him with a knife" and that, while Powell was making the statements, "Lonnie didn't seem to disagree" and, further, that Powell stated that "Lonnie made him kill a nigger last night" and that Wickliffe stood "grinning" as Powell made those statements the day following the slaying.

Counsel for appellant objected on confrontation grounds, stating that appellant would be denied the opportunity to cross-examine Powell. The trial court agreed with the State that Carter could testify as to what Powell said and did, agreeing with the State that appellant had made adoptive admissions. Other witnesses testified to much of the same exchange between Powell and appellant that Carter observed. One witness, Charles Armstrong, testified that appellant admitted being present during the murder and stated that "Lonnie said

that he (victim) came up to, he came up to him (appellant) and begged him not to kill him, and then they said just pulled back his head, put the gun up to it and says his head just exploded."

We have held in earlier cases that while testimony such as recited above is clearly hearsay, the declarations are admissible, in context with the replies, to disclose the defendant's tacit admission. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218; *Jethroe v. State*, (1974) 262 Ind. 505, 319 N.E.2d 133; *Robinson v. State*, (1974) 262 Ind. 463, 317 N.E.2d 850; *Diamond v. State*, (1924) 195 Ind. 285, 144 N.E. 466. It is the failure of a defendant to deny involvement that is significant; an equivocal or evasive response may be used against him. In the case at bar, after Powell stated that he loved the way appellant beat and stabbed the victim, appellant responded by hand-clapping with Powell, nodding his head, and grinning. Under the circumstances, a reasonable person, if innocent, would have denied such accusations. In addition, the direct admission by appellant to Armstrong of appellant's criminal involvement gives meaning and shows affirmation of the statements made by Powell in the presence of appellant. *See Lynk v. State*, (1979) Ind., 393 N.E.2d 751. Appellant's actions standing alone have little meaning and require Powell's statements to make them capable of being understood by the jury.

█ Appellant also argues that the trial court erred, even if the adoptive admissions were admissible, by not limiting the witnesses' testimony to Powell's statements as to what appellant purportedly did and excluding testimony relating to what Powell said that he personally did. This is in reference to the statement by Powell that he (Powell) shot the victim in the head. Appellant cannot point to any error caused by allowing such evidence to be introduced except that it should not have been permitted. Such testimony is admissible in order to give the triers of fact the best opportunity to weigh the truthfulness of the declarations by giving them a complete picture of what happened on the night of the murder.

The admission would be more damaging to Powell than it ever would be to appellant. There was no error in admitting statements concerning Powell's personal actions.

### III.

█ Appellant's third argument deals with the testimony of Dr. James Benz. Appellant alleges that it was error to allow Dr. Benz to testify on the basis of another doctor's written autopsy report. The autopsy report was written by Dr. Higinio Esparza, who died before the trial began. Dr. Benz was the supervisor of the doctors performing autopsies in Marion County General Hospital. During the trial, Dr. Benz testified that after reading the autopsy report, it was his opinion that the cause of death was due to the firing of a bullet into the victim's head. The autopsy report was not put into evidence.

Appellant argues that the doctor's testimony should not have been admitted since no co-defendant testified against appellant, no other eyewitness testified, and since the evidence suggested that the victim was not only shot but also beaten and stabbed, thus raising a question as to the cause of death. This court has held that a medical doctor can give an opinion as to the cause of death even though his opinion is partially based upon records not in evidence. *Morris v. State*, (1977) 266 Ind. 473, 364 N.E.2d 132; *Smith v. State*, (1972) 259 Ind. 187, 285 N.E.2d 275, *cert. denied* (1972) 409 U.S. 1129, 93 S.Ct. 951, 35 L.Ed.2d 261; *Bivins v. State*, (1972) 254 Ind. 184, 258 N.E.2d 644. Both parties stipulated that Dr. Benz was an expert in forensic pathology. His testimony is one of expert opinion only and can be used by the jury along with all other evidence to reach the ultimate question of the cause of death. There was additional evidence from which the jury could find that the victim died from the bullet wound. Officer Schoppenhurst testified that the victim was pronounced dead by Deputy Coroner Raymond Flyson. He further testified that an autopsy took place in his presence and he observed Dr. Esparza remove State's Exhibit 4, a spent bullet, from

the brain of the victim. This evidence, along with the written autopsy report, was sufficient to support a finding that the victim died as a result of the gunshot wound.

## IV.

Appellant's fourth argument deals with the issue of whether there was sufficient evidence to prove his guilt of felony-murder beyond a·reasonable doubt. Appellant urges that it was wrong to permit a conviction to stand when the conviction is based upon adoptive admissions, and also that the conviction cannot stand since there was absolutely no evidence introduced at trial to establish appellant's guilt of the underlying felony (burglary) which gave rise to the felony-murder conviction.

Some of the evidence in this case is circumstantial. However, we apply the same standard of review to this case as we do to all cases. We consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Ruetz v. State*, (1978) 268 Ind. 42, 373 N.E.2d 152, *cert. denied* (1978) 439 U.S. 897, 99 S.Ct. 261, 58 L.Ed.2d 245. The evidence most favorable to the State reveals that the adoptive admissions of Powell placed appellant at the scene of the murder. Appellant himself told witness Armstrong that the victim begged appellant not to kill him, indicating appellant was inside the victim's house.

In addition, the jury heard evidence that Officer Renee went to the victim's residence in answer to victim's call that someone was trying to break into his house. At that time Officer Renee noticed that the victim had a portable television set and a telephone answering service in his bedroom. This police visit took place a few hours before the victim was murdered. Witness Sides testified that he spent the night at appellant's house on May 7th; that in the early morning hours of May 8th, the day of the murder, appellant and Powell awakened Sides and Powell informed him that they were leaving to go get some money and go to a party. Sides went back to sleep. Upon awakening in the morning, Sides ob-

served a portable television set and a telephone answering service that had not been there earlier and that appellant had returned. It is clear that a conviction may be sustained upon circumstantial evidence alone. *Waters v. State*, (1981) Ind., 415 N.E.2d 711, 715; *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 160; *Ruetz v. State*, (1978) *supra*, at 48–51, 373 N.E.2d at 156–57. The evidence here is sufficient to support the jury's finding that appellant was in decedent's house, that a burglary took place, that a murder took place, and thus the conviction for felony-murder was sustained by sufficient evidence.

## V.

Appellant's fifth issue alleges that the totality of the circumstances of this case amounted to a denial of fundamental fairness and due process of law. Appellant has not cited any authority in support of this statement; thus, this issue on appeal has been waived. *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411; *Mosely v. State*, (1977) 266 Ind. 675, 366 N.E.2d 648.

Appellant also lists eight additional errors that were not set out in the belated motion to correct errors. Therefore, these issues are also waived since they were not preserved in the motion to correct errors. *Murphy v. State*, (1978) 267 Ind. 184, 187, 369 N.E.2d 411, 413; *Spivey v. State*, (1971) 257 Ind. 257, 263, 274 N.E.2d 227, 230.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., concurs in result.