## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2019, 10:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew Michaloski
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David D. Battles,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 8, 2019

Court of Appeals Case No.
18A-CR-2047

Appeal from the Marion County
Superior Court

The Honorable Lisa F. Borges,
Judge

Trial Court Cause No.
49G04-1801-F3-541

**Barnes, Senior Judge.**

# Statement of the Case

David Battles appeals his conviction of criminal recklessness, a Level 6 felony, and his aggregate sentence of eleven years. We affirm.

# Issues

Battles presents two issues for our review, which we restate as:

> I. Whether there was sufficient evidence to support his conviction of criminal recklessness.

> II. Whether his sentence is inappropriate.

# Facts and Procedural History

In November 2017, Battles and his two friends, Jason Spears and Robbie Lyons, went to the home of Alexandrea Caudill. Alexandrea's fiancé, Briceson Roller, lived with Alexandrea. There was tension among the four men because prior to dating and living with Alexandrea, Roller had dated and lived with Spears' sister. When the three men arrived at Alexandrea's, Lyons remained in the truck. Spears and Battles exited the truck, and Spears armed himself with a wooden bat. Alexandrea went outside and told the men to leave, but they ignored her and advanced into the yard. When Spears appeared as if he was going to strike Alexandrea with the bat, Roller emerged from the house and stepped in front of her; Spears then hit Roller on the temple with the bat. Spears dropped the bat, and the two men engaged in a fistfight. During the fight, Spears picked up Roller and slammed him down into a metal fire pit.

[4] Alexandrea told Battles to get Spears and leave, but Battles was watching the progress of the fight. Spears had picked up the bat again and was striking Roller in the neck and shoulders. At one point, Battles went to the truck and returned with a sledge hammer. While Spears and Roller were fighting, Battles stepped in and hit Roller in the back of the head with the sledge hammer. Roller fell to the ground. As Battles took another swing, Alexandrea intervened to protect Roller and was hit, injuring her wrist. Alexandrea's mom and stepdad came out of the house with guns, and the three men left. Roller, who was in and out of consciousness, was taken to the hospital where they closed his head laceration with twelve staples. Roller has experienced lasting effects from this attack, including memory loss, severe migraines, light sensitivity, and difficulty sleeping. Alexandrea suffered pain and bruising from being hit on the wrist.

[5] Based upon this incident, Battles was charged with Count I aggravated battery, a Level 3 felony;[1] Count II battery by means of a deadly weapon, a Level 5 felony;[2] Count III battery resulting in serious bodily injury, a Level 5 felony;[3] and Count IV criminal recklessness, a Level 6 felony.[4] Battles was tried in a joint trial with Spears, and he was convicted on all counts. The trial court

---

[1] Ind. Code § 35-42-2-1.5(2) (2014).

[2] Ind. Code §§ 35-42-2-1(c)(1), (g)(2) (2016).

[3] Ind. Code §§ 35-42-2-1(c)(1), (g)(1).

[4] Ind. Code §§ 35-42-2-2(a), (b)(1)(A) (2014).

vacated Counts II and III and sentenced Battles to an aggregate sentence of eleven years. In this appeal, Battles challenges only his conviction of criminal recklessness in Count IV. In addition, he challenges the appropriateness of his sentence.

# Discussion and Decision

## I. Sufficiency of the Evidence

[6] Battles first contends the State failed to present evidence sufficient to support his conviction of criminal recklessness. When an appellant challenges the sufficiency of the evidence of his conviction after a jury verdict, "the appellate posture is markedly deferential to the outcome below." *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016). Upon such a review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Brasher v. State*, 746 N.E.2d 71, 72 (Ind. 2001). Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt, we will affirm the conviction. *Dillard v. State*, 755 N.E.2d 1085, 1089 (Ind. 2001).

[7] In order to convict Battles of criminal recklessness in this case, the State was required to prove beyond a reasonable doubt that he (1) recklessly (2) while armed with a deadly weapon (i.e., sledge hammer) (3) brandished and swung the weapon in the presence and/or against the person of Alexandrea Caudill (4) thereby creating a substantial risk of bodily injury to her. Appellant's App. Vol.

II, pp. 91-92; *see also* Ind. Code §§ 35-42-2-2(a), (b)(1)(A). Battles challenges the State's evidence as to the element he acted recklessly.

[8] Indiana Code section 35-41-2-2 (c) (1977) defines the term "recklessly" as follows:

> A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

Thus, the State did not have to show that Battles intended the harm that resulted from his actions; rather, it only had to prove that he realized or should have realized there was a strong probability that bodily injury might occur as a result of his actions. *Miller v. State*, 449 N.E.2d 1119, 1121 (Ind. Ct. App. 1983).

[9] The evidence at trial showed that Battles showed up at Alexandrea's house with Spears and Lyons looking for a fight. Alexandrea immediately came out of the house and yelled at the men, telling them to leave. Thereafter, she remained outside the house and in close proximity to Roller, Battles, and Spears during the entire incident. At some point, Battles armed himself with a sledge hammer and swung it at the back of Roller's head, dazing Roller and causing a laceration, bleeding, and loss of consciousness. When Battles prepared to land another blow of the sledge hammer to Roller, Alexandrea stepped in to protect Roller. The area of the sledge hammer where the handle meets the head hit Alexandrea's wrist, causing pain and bruising. When Battles swung the sledge

hammer, he knew Alexandrea was present and in the immediate area. A reasonable person should realize that such an action is likely to inflict bodily injury. Indeed, Battles knew hitting a person with a sledge hammer would inflict bodily harm because he had already severely injured Roller by doing just that.

[10] In support of his argument that the State failed to show he realized or should have realized there was a strong probability that bodily injury might occur as a result of his actions, Battles attempts to analogize his wielding of a sledge hammer in this attack to swinging a golf club or a baseball bat. He states that "it is sheer speculation to conclude that he was aware of the strong possibility that he would injure someone" and that "[if] such a theory of criminal liability were to be applied, then anyone swinging a golf club or a baseball bat would be subject to a criminal conviction" as well as "[a]nyone hammering a nail." Appellant's Br. p. 14. However, his analogy is misguided. Swinging a sledge hammer in order to strike and injure someone during an attack is clearly a substantial deviation from acceptable standards of conduct; conversely, swinging a golf club or baseball bat while playing or practicing golf or baseball, respectively, or swinging a hammer when hammering a nail are all within the bounds of acceptable standards of conduct.

[11] In addition, Battles seems to somewhat challenge the deadly weapon element of his offense. To the extent that this is the case, his claim fails. Indiana Code section 35-31.5-2-86(a)(2) (2012), in pertinent part, defines the term deadly weapon as a destructive device or equipment that, in the manner it is used or is

intended to be used, is readily capable of causing serious bodily injury. Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292 (2012). Further,

> The question of whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case. The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime.

*Merriweather v. State*, 778 N.E.2d 449, 457-58 (Ind. Ct. App. 2002).

[12] Here, Battles used the sledge hammer in such a manner that when he hit Roller in the back of the head with it, it inflicted a wound requiring twelve staples to close. Fortunately causing only pain and bruising to Alexandrea, the sledge hammer Battles wielded certainly had the actual ability to inflict serious injury upon Alexandrea, as evidenced by the serious injury it did in fact cause Roller. From this evidence, the jury was well within its role as the trier of fact to determine that the sledge hammer, used as it was in these circumstances as a blunt-force weapon, constituted a deadly weapon, and Battles' claim, if any, to the contrary is completely without merit. *See, e.g.*, *Morris v. State*, 266 Ind. 473, 482, 364 N.E.2d 132, 138 (1977) ("While it may be argued that a hammer is not

normally a deadly weapon, this court has held that instrumentalities that are harmless in their general usage may nevertheless be regarded as lethal when utilized in a harmful manner").

[13] There was sufficient evidence that Battles acted recklessly when he struck Alexandrea with the sledge hammer.

## II. Inappropriate Sentence

[14] Battles also asserts that his sentence is inappropriate in light of the nature of the offenses and his character.

[15] Although a trial court may have acted within its lawful discretion in imposing a sentence, article VII, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Such deference to the trial court's judgment should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by

restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character). *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Thus, the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[16] To assess whether a sentence is inappropriate, we look first to the statutory range established for the class of the offenses. Here, Battles was convicted of Level 3 felony aggravated battery, for which the advisory sentence is nine years, with a minimum sentence of three years and a maximum of sixteen. Ind. Code § 35-50-2-5(b) (2014). In addition, Battles was convicted of Level 6 felony criminal recklessness, for which the advisory sentence is one year, with a minimum of six months and a maximum of two and one-half years. Ind. Code § 35-50-2-7(b) (2016). Battles was sentenced to nine years executed followed by two years in a community corrections program for the Level 3 offense and one year executed followed by one year in a community corrections program on the Level 6 offense, to be served concurrently to his sentence for the Level 3. Thus, his aggregate sentence of eleven years is slightly above the advisory and well below the maximum for both felonies.

[17] Next, we look to the nature of the offenses and the character of the offender. As to the nature of the current offenses, we note that Battles' attack upon Roller

was extremely violent and, as acknowledged by Battles, unjustified. *See* Appellant's Br. pp. 19, 20. Battles was not involved in the fight but was merely an observer until he chose to enter the fray. With his first swing of the sledge hammer, Battles caused a laceration to the back of Roller's head which immediately began to bleed. The blow dazed Roller and caused him to collapse and intermittently lose consciousness. And yet, Battles then attempted to strike Roller again with the sledge hammer, but instead he struck Alexandrea on the wrist as she tried to protect Roller. An immediate result of this attack was that Roller required twelve staples to close his head wound. In addition, Roller suffers the ongoing effects of memory loss, headaches, and sleeplessness.

[18] With regard to the character of the offender, Battles touts as a positive factor that he "had no quarrel with Briceson Roller" and "no issues" with Alexandrea but that his actions were just "an effort to assist his friend" Spears and that there was nothing "especially malicious" about his conduct. *Id.* However, we agree with the State that Battles' lack of a personal motive for his brutal attack of Roller highlights the nature of his true character but not in a positive manner.

[19] At sentencing, although acknowledging that much of Battles' criminal conduct is not recent, the trial court determined that his criminal history is an aggravating factor. The court specifically noted he has had twenty-seven prison conduct incidents and numerous probation revocations and observed, "I note his repeated failures on opportunities for probation and suspended sentences have resulted in multiple, multiple times being revoked. It's hard to look at his history and find one thing where he managed to get through the sentence

successfully. . . . It got revoked almost every time. And almost every time revoked for a new offense." Tr. Vol. 3, p. 39. The court also recognized Battles' troubled childhood and the hardship to his dependents that will result from his imprisonment.

[20] Even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State*, 13 N.E.3d 440, 448 (Ind. Ct. App. 2014), *trans. denied*. The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and proximity of prior offenses in relation to the current offense, as well as the number of prior offenses. *Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015), *trans. denied*. Beyond Battles' plentiful juvenile activity, he has sixteen adult arrests and has amassed nine misdemeanor convictions and three felony convictions. Especially pertinent to this case, one of Battles' misdemeanor convictions is a domestic violence battery and another is a battery that resulted in bodily injury. Moreover, apparently undeterred in his criminal endeavors, Battles had a pending felony theft charge at the time of sentencing.

[21] Further, Indiana Code section 35-38-1-7.1(a)(6) (2015) provides that, in determining a defendant's sentence, the court may consider the fact that the defendant recently violated conditions of probation as an aggravating circumstance. As the trial court noted here, Battles did not perform well when afforded the privilege of probation—six times he was placed on probation and six times his probation was revoked.

[22] Although acknowledging that the trial court took into account his troubled childhood, Battles nevertheless outlines certain events of his childhood and suggests that his sentence is inappropriate in light of such circumstances. Evidence of a difficult childhood warrants little, if any, mitigating weight. *Bethea v. State*, 983 N.E.2d 1134, 1141 (Ind. 2013). Yet, the trial court took this factor into consideration and noted that, in spite of such circumstances, Battles emerged "as a person who found a way to make a living" and had "attended Ivy Tech and Harrison College." Tr. Vol. 3, p. 38.

[23] Finally, Battles mentions his caretaking of members of his family. A trial court is not required to find that a defendant's incarceration would result in undue hardship to his dependents. *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied*. "Many persons convicted of crimes have dependents and, absent special circumstances showing that the hardship to them is 'undue,' a trial court does not abuse its discretion by not finding this to be a mitigating factor." *Id.* Nevertheless, the trial court took this factor into consideration as well.

[24] Battles has not met his burden of presenting compelling evidence portraying in a positive light the nature of the offenses and his character in order to overcome the trial court's sentencing decision.

# Conclusion

[25] For the reasons stated, we conclude there was sufficient evidence to support Battles' conviction of criminal recklessness. In addition, considering both the

nature of the offenses and the character of the offender and giving due consideration to the trial court's sentencing decision, we are unable to conclude that Battles' eleven-year sentence is inappropriate.

Bradford, J., and Altice, J., concur.